Boonthue VONGSAKDY, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 97–71387.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1999.

Decided March 19, 1999.

Suzanne B. Friedman, Jorge I. Rodri-guez–Choi, San Francisco, California, for petitioner.

Richard M. Evans, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before: KRAVITCH,[1] REINHARDT and T.G. NELSON, Circuit Judges.

REINHARDT, Circuit Judge:

Boonthue Vongsakdy petitions this court for review of a final order of the Board of Immigration Appeals ("BIA" or "Board") denying his request for asylum and withholding of deportation. We conclude that Vongsakdy suffered past persecution so severe as to make him eligible for asylum on humanitarian grounds. Accordingly, we grant the petition for review.

## I.

The Attorney General has discretion to grant an alien asylum if the alien is determined to be a "refugee," within the meaning of section 101(a)(42)(A) of the

---

**1.** The Honorable Phyllis A. Kravitch, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

INA, 8 U.S.C. § 1101(a)(42)(A). Refugee status is established in most instances by evidence that an alien is unable or unwilling to return to his home country because of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 428, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Singh v. Ilchert,* 63 F.3d 1501, 1505 (9th Cir.1995). There are, however, cases in which an applicant may establish refugee status by virtue of past persecution alone, even if he does not have a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(ii) (an applicant may be granted asylum if he demonstrates compelling reasons arising out of the severity of his past persecution); *Acewicz v. INS,* 984 F.2d 1056, 1062 (9th Cir.1993) (even where there is little likelihood of future persecution, the BIA may grant asylum where applicant has suffered under atrocious forms of persecution). This avenue for asylum has been reserved for rare situations of "atrocious" persecution, where the alien establishes that, regardless of any threat of future persecution, the circumstances surrounding the past persecution were so unusual and severe that he is unable to return to his home country. *See Lopez–Galarza v. INS,* 99 F.3d 954 (9th Cir.1996) (petitioner subjected to extreme physical abuse, including repeated rape); *Matter of Chen,* Interim Decision 3104, 1989 WL 331860 (BIA 1989) (petitioner locked in his house for six months, deprived of food and medical care, and "re-educated" because of his father's political beliefs). An alien who demonstrates such compelling reasons is eligible for asylum, unless one of the mandatory grounds for denial, such as a past conviction for an aggravated felony, applies. *See* 8 C.F.R. § 208.13(b)(ii), (c).

## II.

Vongsakdy, a native and citizen of Laos, concedes deportability but seeks asylum and withholding of deportation based on his experiences in a Laotian labor camp. In support of his application for asylum,

Vongsakdy credibly testified that in 1975, when he was a nineteen-year old student, he was forcibly taken by the Communist Laotian government and detained in the Viengxay labor camp until May 1977. The government imprisoned him because of his strong political beliefs in democracy and his family's support of the former Laotian monarchy.

At the labor camp, Vongsakdy suffered beatings, torture, and harassment. He was forced to do hard manual labor for ten hours every day, including cutting wood, hauling lumber and cooking for the entire camp. He was allowed only one meal a day and denied adequate water. At the end of each day of work, Vongsakdy was forced to attend "reeducation" where he was beaten and tortured in an effort to compel him to accept the Communist doctrine. Heavily armed guards kept watch over his every action and punished him if he faltered, threatening him with death should he fail to follow orders. On one occasion, when Vongsakdy fell down while carrying lumber, guards used the lumber to beat him on his face and hands, and broke his thumb. On another occasion, Vongsakdy became ill with a high fever and could not work. When he tried to explain his condition to the guards, they beat him with a dagger-shaped piece of wood, severely cutting his legs, and then kicked him until he lost consciousness. He awoke in a pool of his own blood; the guards denied him medical treatment for his injuries. In July 1976, Vongsakdy was forced to watch the guards kill one of his friends; his friend was killed because he informed the guard sergeant that it would be impossible to finish cutting the wood that day due to the bad weather. In September 1976, Vongsakdy, starving, took a piece of fruit from a tree. The guard sergeant saw him take the fruit and began striking him on the head with his rifle. When Vongsakdy tried to block the blows with his hand, his thumb was severed by the rifle. He was forced to continue working without any medical treatment. As a

result, he lost a great deal of blood and his hand became severely infected.

After his release from the camp, Vongsakdy was placed in a government-sponsored school to study malaria. When he graduated, the government required him to work for its health department as a lab technician. Vongsakdy could not leave his job at the health department because the government mandated that he work in its employ for as long as he lived. He was also compelled to attend regular meetings on the "new politics."

In 1992, Vongsakdy reestablished contact with his older brother, who had left Laos and emigrated to the United States some years before. Vongsakdy saw this as his only chance to leave Laos. He obtained a passport by bribing a police officer, who warned him not to reveal the truth about his detention to anyone in the United States or his family would be harmed. Three months after his arrival in the United States, he applied for asylum.

## III.

The BIA dismissed Vongsakdy's appeal after conducting a *de novo* review of the record; accordingly, our review is limited to the BIA's decision. *See Gonzalez v. INS*, 82 F.3d 903, 907 (9th Cir.1996). Although the BIA noted that Vongsakdy's testimony was not completely consistent with his asylum applications, it pointed to only one perceived inconsistency, and did not make an adverse credibility finding. The Immigration Judge ("IJ") accepted Vongsakdy's testimony as true. In these circumstances, we accept his testimony as such. *See Hartooni v. INS*, 21 F.3d 336, 342–43 (9th Cir.1994); *Canjura–Flores v.*

*INS*, 784 F.2d 885, 888–89 (9th Cir.1985).[2] We will reverse the BIA's determination that Vongsakdy is not eligible for asylum or entitled to withholding of deportation only if, based on the evidence in the record, a reasonable factfinder would be compelled to conclude that the requisite fear of persecution existed. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

The Board held, first, that assuming Vongsakdy had suffered past persecution on account of his political ties with the former Laotian monarchy, he failed to demonstrate a well-founded fear of future persecution, given his ability to remain in Laos to attend school and work for the government, the Laotian authorities' grant of permission to leave, and the Department of State Report indicating that the Laotian government was welcoming back those nationals who fled after 1975. The Board, furthermore, concluded that Vongsakdy failed to demonstrate compelling reasons to grant asylum based upon the severity of his past persecution alone, because the harm he suffered did not rise to the level required for a grant of asylum. We need consider only the second issue.

With respect to the question of egregious past persecution, the evidence in the record compels the opposite conclusion to that reached by the BIA. Even absent a likelihood of future persecution, asylum is warranted for humanitarian reasons because Vongsakdy demonstrated that in the past he suffered "atrocious forms of persecution" on account of political opinion. *Acewicz*, 984 F.2d at 1062. In *Matter of Chen*, the BIA concluded that atrocious

2. We note that the perceived inconsistency concerns two different accounts of injury to Vongsakdy's thumb, one incident involving a guard breaking Vongsakdy's thumb, and another involving a guard severing one of his thumbs with a gun. The IJ, who had the opportunity to observe Vongsakdy throughout his lengthy testimony, and who explicitly considered and accepted Vongsakdy's explanations regarding the discrepancies in the record, did not express any doubt that both incidents occurred. Moreover, he would surely have been able to observe whether Vongsakdy had fabricated a story that he suffered from a severed thumb. At no point did the IJ suggest that Vongsakdy's thumb had not been severed. Rather, he stated that he found Vongsakdy credible in light of his explanations, attributing the minor differences in his accounts to his general confusion and his fear that the immigration proceedings might not be treated as confidential. *See* AR at 68–69.

persecution had been shown where a Chinese Christian was confined to his house for six months during China's Cultural Revolution, interrogated, kicked, and deprived of food and medical care. He was later sent to a Communist "reeducation camp" where he was ostracized because his father was a Christian minister. This court has stated that although there is no "minimum showing of 'atrocity' necessary to warrant a discretionary grant of asylum based on past persecution alone," *Kazlauskas v. INS*, 46 F.3d 902, 907 (9th Cir.1995), the BIA should consider whether a petitioner's experience is of "comparable severity" to Chen's. *See Lopez–Galarza*, 99 F.3d at 963; *Kahssai v. INS*, 16 F.3d 323, 329 (9th Cir.1994) (Reinhardt, J., concurring). The BIA here failed to provide any reasoning for denying Vongsakdy asylum on humanitarian grounds, simply stating that the harm he suffered did "not rise to that level at which [it] would grant asylum." *See Lopez–Galarza*, 99 F.3d at 962 ("A ... serious problem with the BIA's decision ... is that the BIA simply failed to analyze whether [petitioner] had suffered under atrocious forms of past persecution"). The BIA erred in so concluding.

Like Chen, Vongsakdy was placed in a camp, physically and verbally abused, and deprived of adequate food for a substantial period of time. Both suffered serious physical injuries and were denied medical care, resulting in permanent impairment. Both were forced to undergo "reeducation," enduring abuse meant to compel acceptance of the government's political doctrines. This severe physical and mental abuse was inflicted on Vongsakdy by the Pathet Lao government on account of his and his family's overt support of the former monarchy. Vongsakdy presented compelling facts comparable in severity to those in *Chen* and more egregious than those in cases in which this court has denied asylum on humanitarian grounds. For example, in *Marcu v. INS*, 147 F.3d 1078, 1080 (9th Cir.1998), while the petitioner from time to time incurred interrogations and beatings by members of the Romanian police, and was labeled an "ene-my" by his peers, teachers, and the police, principally on account of his mother's actions, he did not endure either a lengthy detention or the kind of physical and psychological abuse suffered by Vongsakdy and the petitioners in *Lopez–Galarza* and *Chen*. In fact, the real victim in *Marcu* appears to have been the petitioner's mother, who clearly would have qualified for asylum under *Chen*. 147 F.3d at 1083–85 (Hawkins, J., dissenting). Because the facts in *Marcu* were not comparable in severity to those in *Chen*, or in the case before us, the BIA's extensive description of the facts and careful consideration of the evidence were sufficient to support its denial of Marcu's claim. A review of the record in the instant case, however, compels the conclusion that the BIA erred in denying Vongsakdy's claim: he has demonstrated his eligibility for asylum based on past persecution sufficiently atrocious to justify relief on humanitarian grounds.

Finally, we note that the fact that Vongsakdy remained in his native country for a considerable period of time following his release from the labor camp is irrelevant to evaluating the "atrocity" of his past persecution. This court has held that for purposes of a humanitarian grant of asylum based on past persecution alone, we need not reach the petitioner's post-persecution circumstances. *See Lopez–Galarza*, 99 F.3d at 962 (petitioner's experiences post-persecution simply are not relevant to the determination of the atrocity of her past persecution).

## IV.

The record mandates the conclusion that Vongsakdy has demonstrated compelling reasons for being unable to return to Laos. The BIA erred in concluding that Vongsakdy did not suffer atrocious past persecution in light of the credible accounts of the cruelties he endured in the labor camp. Because there is no evidence in the record that any of the mandatory grounds for denial of asylum apply, Vongsakdy is eligi-

ble for asylum. We remand for proceedings consistent with this opinion.

PETITION FOR REVIEW GRANTED.