Rosalba **AGUIRRE–CERVANTES** aka
Maria Esperanza Castillo,
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 99–70861.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 2001

Filed March 21, 2001

Reena N. Glazer, Shea & Gardner, Washington, D.C., for the petitioner.

Shelley Goad, United States Department of Justice, Civil Division, Washington, D.C., for the respondent.

Before: PREGERSON, CANBY and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Rosalba Aguirre–Cervantes ("petitioner"), a 19–year–old native of Mexico, petitions for review of an order of the Board of Immigration Appeals ("BIA"), which vacated a decision by the Immigration Judge granting her request for asylum. Over many years, the petitioner was subjected to extreme abuse by her father. She contends this abuse constituted persecution, and that it occurred on account of her membership in a particular social group consisting of her immediate family, all of whose members were abused by her father. At the hearing before the Immigration Judge ("IJ"), the petitioner presented evidence that the country of Mexico was unable or unwilling to do anything about this abuse, and that if she returned to Mexico the abuse would likely continue.

The IJ concluded that the petitioner had satisfied the statutory requirements for asylum, but denied her request for withholding of removal. The INS appealed to the BIA, which agreed that the petitioner had suffered persecution but concluded that she was not eligible for asylum on the ground of persecution on account of membership in a particular social group.

The primary issue is whether the petitioner's immediate family, all of whose members lived together and were subjected to abuse by the petitioner's father, constitutes a protected particular social group under the asylum statute, 8 U.S.C. § 1101(a)(42)(A) (Supp. V 1999). We conclude that it does. We also conclude that the petitioner was persecuted by her father on account of her membership in that social group, that she has a well-founded fear of future persecution, and that Mexico is unable or unwilling to interfere with that persecution.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a) (Supp. V 1999). We grant the petitioner's petition for review and hold that she is eligible for asylum. We further hold that she is entitled to withholding of removal because she has established a clear probability of persecution if she returns to Mexico.

**I**

The petitioner lived in Michoacan, Mexico, with her parents and six of her nine siblings. Two of her brothers now live in the United States, and another sister lives with her grandfather in Michoacan.

In January 1998, at the age of 16, the petitioner left Mexico because of severe, repeated physical abuse by her father. She testified that from the time she was about three years old, her father beat her frequently and severely, sometimes daily and sometimes weekly. In administering these beatings, he employed a horse whip, tree branches, a hose and his fists. The petitioner suffered a dislocated elbow and lost consciousness as a result of some of this abuse, and bears various scars on her forehead, hand, arm and leg. Her father refused to allow her to seek medical treatment for any of the injuries he inflicted. Furthermore, she testified that her mother did not allow her to go to the police, telling her that her father had the right to do

with her what he wanted. Several times, the petitioner went to live with her grandfather to escape her father's beatings, but each time her father came after her and forced her to return with him.

The petitioner testified that she was not aware of any shelters, agencies or children's services in Mexico that would help her. In addition, she testified that she believed the police would not have helped her even if she had been able to contact them. She related a story about two sisters whom she knew who were being physically and sexually abused by their father. Although they contacted the police for help, the police did little if anything, the sisters' circumstances did not change, and the father continued to abuse them.

Petitioner's father, Mr. Aguirre, abused not only the petitioner, but all of her siblings and her mother as well. He abused petitioner's mother (his wife) especially frequently during her pregnancies. The petitioner testified that whenever she tried to protect her mother by intervening, she was also beaten. In the last incident before she left Mexico, she heard her parents arguing and realized that her father was going to beat her mother. Knowing that her mother was healing from a cesarean delivery of her last child, she tried to protect her. Her father beat the petitioner severely and threatened to kill both her and her mother.

The petitioner presented evidence that in Mexico domestic violence is pervasive, officially tolerated, and in some areas legally approved. *See* John Makeig, *Spousal Abuse in Mexico, U.S. Examined,* Houston Chronicle, Sept. 28, 1997, at A41 (hereafter "Makeig"); Bureau of Democracy, Human Rights and Labor, U.S. Department of State; Mexico—Profile of Asylum Claims & Country Conditions 5 (July 1997) (hereafter "Mexico—Profile"). The State Department concluded that women who suffer domestic violence "are reluctant

to report abuse or file charges, and even when notified, police are reluctant to intervene in what society considers to be a domestic matter." Mexico—Profile, p. 5. Evidence in the record further establishes that in Mexico there are very few shelters or social services available to domestic violence victims, and that few women avail themselves of these services. *Id.;* Makeig. In addition, many child victims of domestic violence end up homeless and are among the more than 13,000 children living on the streets of Mexico City. U.S. Department of State, Country Reports on Human Rights Practices for 1997 585 (1998) (hereafter "Country Reports").

The IJ found that the petitioner's testimony was "credible and consistent and detailed." The IJ ruled that she was a member of a social group of "victims of domestic violence," or of "the family which is a victim of domestic violence."

The BIA agreed with the IJ that the petitioner's severe abuse by her father constituted persecution. The BIA also credited "the [petitioner's] testimony in general" and stated that "[t]he determinative issue ... is whether the harm experienced by the [petitioner] was, or in the future may be inflicted 'on account of' a statutorily protected ground." The BIA characterized the relevant social group as "Mexican children who are victims of domestic violence," and determined that such a group had not adequately been shown to be a particular social group for asylum purposes. The BIA reversed the decision of the IJ, and this petition for review followed.

**II**

 BIA legal interpretations are reviewed de novo but generally are entitled to deference under *Chevron, U.S.A. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc).[1] In

---

1. Under *Chevron,* the Court must ask whether the statute is silent or ambiguous with respect to the specific issue before it, and, if so, whether the agency's answer is based on a

permissible construction of the statute. *INS v. Aguirre–Aguirre,* 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778).

interpreting the Immigration and Nationality Act, the BIA is bound by this circuit's earlier decisions in cases originating within this circuit. *Id.; Singh v. Ilchert,* 63 F.3d 1501, 1508 (9th Cir.1995) (citing *NLRB v. Ashkenazy Prop. Mgmt. Corp.,* 817 F.2d 74, 75 (9th Cir.1987)).

▬▬▬ The BIA's factual findings are reviewed under a "substantial evidence" standard; a denial of asylum will be upheld if it is supported by reasonable, substantial and probative evidence in the record. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

▬▬▬ In general, we do not remand a matter to the BIA if, on the record before us, it is clear that we would be "compelled to reverse [the BIA's] decision if it had decided the matter against the applicant." *Navas v. INS,* 217 F.3d 646, 662 (9th Cir.2000) (citations omitted). If the ultimate outcome on an issue is clear on the record, remand is inappropriate, even if the BIA reasonably chose not to reach that issue. *Id.*

The petitioner argued before the BIA that her immediate family constituted a particular social group entitled to protection under the asylum statute, 8 U.S.C. § 1101(a)(42)(A). The BIA, however, defined the group for which the petitioner sought protection as "Mexican children who are victims of domestic violence." The BIA did not address the question whether a family can be a particular social group for asylum purposes; accordingly, *Chevron* deference is not relevant. Rather, we review de novo the legal question of whether the petitioner's immediate family is a particular social group entitled to protection under 8 U.S.C. § 1101(a)(42)(A).

## III

### A. *Exhaustion of Administrative Remedies*

▬▬▬ The INS argues that the petitioner did not exhaust her claim that she was persecuted on account of her family membership because this claim was not proper-

ly raised before the BIA. "Failure to raise an issue below constitutes failure to exhaust administrative remedies and 'deprives this Court of jurisdiction to hear the matter.'" *Farhoud v. INS,* 122 F.3d 794, 796 (9th Cir.1997) (quoting *Vargas v. United States Dep't of Immigration and Naturalization,* 831 F.2d 906, 907 (9th Cir. 1987)).

The INS asserts that the petitioner presented to the BIA several conflicting definitions of her social group, and as a result did not properly raise the family group argument. The petitioner's proposed social group definitions included "a family [ ] in which her father is a perpetrator of domestic violence," "a family of domestic violence," "female children who are victims of child abuse and witnesses of domestic violence and who believe that they should not have to conform to norms of patriarchal abuse," and "children who have become targets of domestic violence by trying to protect their mothers from domestic violence." The INS contends these varying definitions were misleading and did not sufficiently focus her argument that her family was the relevant social group. We disagree.

The petitioner did indeed offer alternative formulations of her social group claim, but that did not invalidate the claim. *See In re Kasinga,* Int. Dec. 3278 (BIA 1996), 1996 WL 379826 (recognizing that both the INS and the applicant "advanced several formulations of the 'particular social group' at issue" and creating a slightly different formulation). In her brief to the BIA, the petitioner specifically captioned one of her arguments: "[Petitioner] [s]uffered [p]ersecution on account of her membership in a family, in which her father is a perpetrator of domestic violence." In that section of her brief, she argued that her "social group consists of members of her ultra traditional patriarchal family. [Petitioner] is a member of this social group by birth. The fundamental characteristic shared by the members of this social group is that all of its members

belong to Mr. Aguirre's family. This is a 'distinct and recognizable' group of people that are distinguished from the rest of the population by their membership in the 'Aguirre family.'" The brief describes the members of the group as the petitioner's "immediate family members." This clearly raised the argument that the petitioner's particular social group consisted of her immediate family.

We conclude the petitioner exhausted her administrative remedies as to her family group claim, and we have jurisdiction to adjudicate that claim. *See Urbina–Osejo v. INS*, 124 F.3d 1314, 1317 (9th Cir.1997) (holding that the petitioner raised an issue before the BIA and thereby preserved it for judicial review by introducing evidence of it in her declaration, which was not challenged by the INS).

### B. A Family as a Particular Social Group

To be eligible for asylum, an applicant must establish that she is a refugee. A refugee is a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of," his or her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

We have defined a "particular social group" as

> a collection of people closely affiliated with each other, who are actuated by some common impulse or interest. Of central concern is the existence of a voluntary associational relationship among the purported members, which imparts some common characteristic that is fundamental to their identity as a member of that discrete social group.

Perhaps a prototypical example of a "particular social group" would consist of the *immediate members of a certain family*, the family being a focus of fundamental affiliational concerns and common interests for most people.

*Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir.1986) (emphasis added).

While our statement in *Sanchez–Trujillo* that the family is a prototypical example of a particular social group was not essential to the holding, we have confirmed the *Sanchez–Trujillo* formulation in subsequent cases. For example, in *Hernandez–Montiel v. INS*, 225 F.3d 1084, 1091 (9th Cir. 2000), in which the particular social group was "made up of gay men with female sexual identities," we held that a particular social group "is one united by a voluntary association, including a former association, or by an innate characteristic that is so fundamental to the identities or consciences of its members that members either cannot or should not be required to change it." *Id.* at 1093. Additionally, in *Pedro–Mateo v. INS*, 224 F.3d 1147, 1151 (9th Cir.2000), we held that indigenous people comprising a large percentage of the population of a disputed area do not constitute a particular social group, in contrast to the immediate members of a certain family, as discussed in *Sanchez–Trujillo*. Similarly, in *Mgoian v. INS*, 184 F.3d 1029, 1036 (9th Cir.1999), we cited *Sanchez–Trujillo* in holding that "a pattern of persecution targeting a given family that plays a prominent role in a minority group that is the object of widespread hostile treatment supports a well-founded fear of persecution by its surviving members."

The First and Seventh Circuits have adopted the *Sanchez–Trujillo* formulation. In *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir.1993) (citing *Ravindran v. INS*, 976 F.2d 754, 761 n. 5 (1st Cir.1992)), the First Circuit stated that "[t]here can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family," and explicitly adopted *Sanchez–Trujillo*'s definition. Likewise, the Seventh Circuit in *Iliev v. INS*, 127 F.3d 638, 642 & n. 4 (7th Cir.1997), stated

that its "case law has suggested, with some certainty, that a family constitutes a cognizable 'particular social group' within the meaning of the law," and noted that *Sanchez–Trujillo* reached the same conclusion.

BIA decisions also include the characteristics of family relationships when defining a particular social group. For example, the BIA has defined a particular social group as

> a group of persons all of whom share a common, immutable characteristic. The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared experience.... [The shared characteristic] must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.

*Matter of Acosta*, 19 I. & N. Dec. 211, 233 (1985). *See also Kasinga*, 1996 WL 379826. In *In re H—*, Int. Dec. 3276 (BIA 1996), 1996 WL 291910, the BIA stated that membership in a clan or subclan that possesses kinship and linguistic ties qualifies as membership in a particular social group, noting that the INS Basic Law Manual on asylum adjudications "recognizes generally that clan membership is a highly recognizable, immutable characteristic that is acquired at birth and is inextricably linked to family ties."

 Consistent with decisions from our circuit, our sister circuits and the BIA, we hold that a family group may qualify as a particular social group within the meaning of 8 U.S.C. § 1101(a)(42)(A). This is not to say, however, that every family group will qualify. Qualification will depend upon the circumstances of each case. The factors which lead us to conclude that the petitioner's family group qualifies as a "particular social group" are that the petitioner's family members are part of an immediate, as opposed to an extended, family unit; they now live or have lived together and are otherwise readily identifiable as a discrete unit; and they share the common experience of all having suffered persecution at the hands of the petitioner's father.

*Estrada–Posadas v. INS*, 924 F.2d 916 (9th Cir.1991), is not to the contrary. There, a Guatemalan woman argued that she was entitled to asylum eligibility based on her membership in her family. Her cousin had been kidnaped, her uncle had been killed and unspecified "relatives on her mother's side of the family" had been forced to leave their homes and move to a different part of the country. Unlike the present case, however, in *Estrada–Posadas* there was no evidence that the petitioner had been persecuted at all, or that she lived with her persecuted family members or was otherwise readily identifiable as a member of their family unit. In those circumstances, we stated that asylum protection from persecution because of membership in a particular social group did not include protection from persecution simply by reason of membership in a family. *Id.* at 919. We observed that "[i]f Congress had intended to grant refugee status on account of 'family membership,' it would have said so." *Id.* That statement is not inconsistent with our holding in this case. If Congress had defined the term "particular social group" to include families as a general matter, all claims based on family membership would succeed, even those asserted by family members in the remotest degree of consanguinity, without regard to the circumstances of the particular case. Congress did not open the asylum gate so wide as to afford protection to any member of any family; but neither did it close the gate to a claim such as that presented by the petitioner.

The INS asks us to delay deciding the petitioner's claim until the promulgation of a proposed Rule modifying the relevant factors that may be considered in identifying a particular social group. *See* Asylum and Withholding Definitions, 65 Fed.Reg. 76,588, 76,598 (proposed Dec. 7, 2000) (to be codified at 8 C.F.R. § 208.15(c)). The proposed Rule adopts the BIA's definition of a particular social group from *Acosta:*

A particular social group is composed of members who share a common, immutable characteristic, such as sex, color, kinship ties, or past experience, that a member either cannot change or that is so fundamental to the identity or conscience of the member that he or she should not be required to change it.

*Id.* (to be codified at 8 C.F.R. § 208.15(c)(1)). It also states that factors that may be considered, but that are not necessarily determinative in deciding whether a particular social group exists, include whether

(i) The members of the group are closely affiliated with each other;

(ii) The members are driven by a common motive or interest;

(iii) A voluntary associational relationship exists between the members;

(iv) The group is recognized to be a societal faction or is otherwise a recognized segment of the population in the country in question;

(v) Members view themselves as members of the group; and

(vi) The society in which the group exists distinguishes members of the group for different treatment or status than is accorded to other members of the society.

*Id.* (to be codified at 8 C.F.R. § 208.15(c)(3)).

We decline the INS's suggestion that we delay our decision pending development of the proposed Rule. Family membership is clearly an immutable characteristic, fundamental to one's identity. Moreover, as noted in the summary accompanying the proposed Rule, the Rule's first three factors for determining whether a particular social group exists are drawn from *Sanchez–Trujillo*. In applying *Sanchez–Trujillo* to the present case, we have necessarily taken those factors into account. We have also considered the fourth, fifth and sixth factors of the proposed Rule and conclude that the petitioner's family satisfies them as well. Mexican society recognizes the family as a discrete unit, and members of a family view themselves as

such. In the domestic violence context, Mexican society also treats members of a family differently from nonmembers because it regards violence within a family as a "domestic matter," rather than a matter for government intervention. Country Reports, p. 583; Mexico—Profile, p. 5. In sum, we have considered the factors specified in the proposed Rule and those factors support our conclusion that the petitioner is entitled to asylum protection as a member of a particular social group.

## C. Persecution "On Account of" Group Membership

■■■ The INS concedes that the petitioner was persecuted. It does not concede, however, that she was persecuted "on account of" her family membership. *See* 65 Fed.Reg. 76,121, 76,133 (Dec. 6, 2000) (to be codified at 8 C.F.R. § 208.13(b)(1)). Establishing persecution on account of family membership is a burden the petitioner bears. She must present evidence, either direct or circumstantial, from which it is reasonable to conclude that her persecutor harmed her at least in part because of her membership in what we have held to be a particular social group, her immediate family. *See Elias–Zacarias,* 502 U.S. at 483, 112 S.Ct. 812; *Hernandez–Montiel,* 225 F.3d at 1096. We conclude the petitioner carried this burden.

The petitioner presented extensive documentary evidence that domestic violence is practiced to control and dominate members of the abuser's family:

Domestic violence is purposeful and instrumental behavior. The pattern of abuse is directed at achieving compliance from or control over the abused party. It is directed at circumscribing the life of the abused person so that independent thought and action are eliminated and so the abused person will become exclusively devoted to fulfilling the needs and requirements of the batterer. The pattern is not impulsive or out of control behavior. Tactics that

work to control the abused party are selectively chosen by the perpetrator. Family Violence Prevention Fund, Domestic Violence in Civil Court Cases 23 (1992). The perpetrator may abuse his children in part to coercively control his partner, as well. *Id.* at 49.

The undisputed evidence demonstrates that Mr. Aguirre's goal was to dominate and persecute members of his immediate family. He abused his wife and all of his children to whom he had access. There is no evidence that he ever acted violently toward any non-family member. The petitioner was most severely attacked by her father when she tried to defend her mother against abuse, particularly when her mother was pregnant. The petitioner's uncle also testified that two of the petitioner's brothers, who now live in the United States, fled Mexico because of frequent abuse by their father. It was the immediate family that was the target of Mr. Aguirre's assaults. It was established by abundant evidence—and undisputed—that it was the petitioner's status as a member of that family that prompted her beatings. The conclusion is inescapable that she suffered those beatings on account of her family membership.

Although the BIA did not address the question whether the petitioner was persecuted on account of her family membership, we would be "compelled to reverse the [BIA's] decision if [the BIA] had decided [that issue] against the applicant." *Navas,* 217 F.3d at 662. Accordingly, remand is not necessary.

D. *The Mexican Government's Inability or Unwillingness to Control the Persecutor*

 We next consider whether the petitioner established that the Mexican government was unable or unwilling to control Mr. Aguirre's abusive behavior.

 When persecution is inflicted by a non-governmental entity, an applicant must be able to show that the persecutor was someone the government was "unable or unwilling to control." *Sangha v. INS,* 103 F.3d 1482, 1487 (9th Cir.1997) (citing *McMullen v. INS,* 658 F.2d 1312, 1315 (9th Cir.1981)). "Government action is not necessarily required; instead, police inaction in the face of . . . persecution [by nongovernmental groups] can suffice to make out a claim." *Navas,* 217 F.3d at 656 n. 10 (citations omitted).

The BIA did not make a clear finding that the Mexican government was unable or unwilling to control Mr. Aguirre. The IJ, however, found that fact to be established, and the same evidence on that issue was before both the IJ and the BIA. In commenting on the documentary evidence, the BIA stated that the evidence "appears to establish that [in Mexico] 'the most pervasive violations of women's rights involve domestic and sexual violence which is believed to be widespread and vastly under reported.'" The BIA further noted that the U.S. State Department's Mexico—Profile stated that more than 13,000 children live on the streets of Mexico City, many of whom are victims of family violence and subsequently become involved with alcohol, drugs, prostitution and petty thievery. The BIA also cited the portion of the Mexico—Profile that reported "women are reluctant to report abuse or file charges, and even when notified, police are reluctant to intervene in what society considers to be a domestic matter."

In addition to the sources cited by the BIA, there was additional documentary evidence that domestic violence is widely condoned in Mexico and that law enforcement authorities are unwilling to intervene in such matters. As of 1997, in all but a few of Mexico's thirty-two states, it was "legal for husbands to use 'correction' discipline to handle wives and children." Makeig. At that time, Mexico City, with a population of 23 million, had only one battered women's shelter, with only eight beds, and battered wives' shelters existed in only five Mexican states. *Id.* This evidence demonstrates the government's inability or unwillingness to control the abusive behavior of domestic

violence perpetrators like Mr. Aguirre and, indeed, its tacit approval of a certain measure of abuse. Mexico—Profile, p. 5 (stating that "[a]lthough the [Mexican] Constitution provides for equality between the sexes, neither the authorities nor society in general respect this practice" and that domestic abuse that does not involve "cruelty or unnecessary frequency" is not considered a crime).

We conclude that any reasonable factfinder considering the evidence in this case would conclude that the Mexican government is unable or unwilling to control Mr. Aguirre's abusive behavior directed toward his immediate family. *See Mgoian,* 184 F.3d at 1036 (holding that when the government failed to investigate the murder of applicant's uncle and Amnesty International indicated the government was unresponsive to violence towards and persecution of religious minorities, the government was unable or unwilling to control the persecutors); *cf. Elnager v. INS,* 930 F.2d 784, 789 (9th Cir.1991) (substantial evidence supported the BIA's conclusion that the Egyptian government was taking steps to control the persecution of Christians, when "[f]ull judicial and administrative remedies exist in Egypt and the government goes to considerable effort to ensure that violence or the threat of violence against Christians ... does not occur").

*E. Well–Founded Fear of Persecution*

 To be eligible for asylum, except in rare cases, *see Vongsakdy v. INS,* 171 F.3d 1203, 1207–08 (9th Cir.1999); *Matter of Chen,* 20 I. & N. Dec. 16, 19 (BIA 1989), the petitioner must establish that she has a well-founded fear of future persecution. We conclude the petitioner made this showing. The INS concedes that the petitioner suffered past persecu-

tion. A finding of past persecution creates a rebuttable presumption that the petitioner has a well-founded fear of future persecution. *Surita v. INS,* 95 F.3d 814, 821 (9th Cir.1996). The INS may rebut this presumption by showing by a preponderance of the evidence that there has been "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" in her home country, or by showing that the applicant "could avoid future persecution by relocating to another part of the applicant's country of nationality ... and under all circumstances, it would be reasonable to expect the applicant to do so." Asylum Procedures, 65 Fed.Reg. 76,121, 76,133 (Dec. 6, 2000) (to be codified at 8 C.F.R. §§ 208.13(b)(1)(i)(A) & (B), 208.13(b)(1)(ii)).

The "fundamental change in circumstances" ground for rebuttal replaces the former ground of changed country conditions.[2] Under the former regulation, we stated that on a remand to the BIA, it generally could not look beyond the existing record to determine whether changed country conditions rebutted the presumption of a well-founded fear of persecution. We stated:

> In recent cases, we have made clear that on remand the BIA may not look beyond the existing record to determine whether changed country conditions rebut the presumption of a well-founded fear of future persecution. In fact, we have refused to remand where the petitioner is entitled to a determination of eligibility on the existing record. *See, e.g., Chand [v. INS],* 222 F.3d at 1077–78; *Navas v. INS,* 217 F.3d 646, 662–63 (9th Cir.2000). The reason for this rule is that a petitioner who was eligible for asylum when the BIA considered his case does not lose that eligibility as a

**2.** Formerly, 8 C.F.R. § 208.13(b)(1)(i) (2000) read,

> If it is determined that the applicant has established past persecution, he or she shall be presumed also to have a well-founded fear of persecution unless a preponderance of the evidence establishes that since the

time the persecution occurred conditions in the applicant's country of nationality or last habitual residence have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he or she were to return.

result of the agency's failure to recognize it. Where the petitioner properly established his eligibility on the record made before the BIA, that eligibility must be accorded its proper legal effect. *Gafoor v. INS*, 231 F.3d 645, 656 n. 6 (9th Cir.2000). Having set out the general rule in *Gafoor*, we then carved out a narrow exception to fit the particular circumstances of that case. *Id.* at 656.

The present case does not fall within *Gafoor*'s narrow exception. In that case we remanded to the BIA to permit it to consider whether a recent political coup that occurred after the petitioner filed his asylum application undermined the BIA's finding that the petitioner's well-founded fear of persecution was rebutted by a change in country conditions. No such relevant subsequent events are present in this case. Accordingly, the general rule applies. Pursuant to that rule, if we were to remand this case to the BIA, it could not look beyond the existing record to determine whether the presumption of a well-founded fear of future persecution was rebutted.

█ Confining ourselves to the existing record, it is clear that the presumption has not been rebutted. First, there is no evidence of a fundamental change in circumstances. The INS argues that because the petitioner is now 19 years old and no longer a minor, her circumstances may have fundamentally changed. However, the record does not indicate that her likelihood of persecution has changed simply because she is a few years older. Any reasonable fact finder would conclude that Mr. Aguirre would abuse her regardless of her age. He abuses both his wife and children of all ages and has threatened to kill both the petitioner and his wife, so clearly a family member's age is irrelevant to the likelihood of abuse.

Second, under the reasoning of *Gafoor*, if the petitioner were eligible for asylum when the BIA considered her case at the time she was 16, she should not lose that eligibility now that she is 19 just because of an erroneous ruling.

Third, the record does not contain any evidence that the petitioner could reasonably relocate within Mexico. When she previously tried to live with her grandfather, her father came after her and forced her to return home. Moreover, Mr. Aguirre has personal information about the petitioner that would assist him in tracking her down if she were to return to Mexico. She is still quite young and most likely would have to turn to relatives or family friends for assistance. Finding her would not likely prove difficult.

Considering all of the relevant circumstances, we are convinced that any reasonable factfinder would conclude that the petitioner's relocation away from her former home in Mexico would not effectively negate the likelihood of her future persecution by her father.

Because we conclude that the record evidence is clearly insufficient to rebut the presumption of a well-founded fear of future persecution, remand would be inappropriate. *See Kataria v. INS*, 232 F.3d 1107, 1115 (9th Cir.2000); *Chand v. INS*, 222 F.3d 1066, 1078 (9th Cir.2000); *Navas*, 217 F.3d at 662; *cf. Surita*, 95 F.3d at 817, 821 (remanding for supplementation of the record and a determination of whether the regulatory presumptions of a well-founded fear of persecution and entitlement to withholding of deportation were rebutted, when evidence in the record made it unclear whether country conditions had changed sufficiently and the BIA had not reached those questions because it erroneously concluded the applicant suffered no past persecution); *Singh v. INS*, 94 F.3d 1353, 1357, 1361 (9th Cir.1996) (same).

## F. Withholding of Removal

█ The petitioner suffered past persecution that threatened her life or freedom. This gives rise to a presumption that her life or freedom would be threatened if she were to return to Mexico. That presumption may be rebutted by a preponderance of the evidence that estab-

lishes there has been "a fundamental change in circumstances" or that the petitioner could avoid a future threat to her life or freedom by relocating to another part of Mexico, if under all the circumstances it would be reasonable to expect her to do so. 65 Fed.Reg. 76,121, 76,135 (Dec. 6, 2000) (to be codified at 8 C.F.R. §§ 208.13(b)(1)(i)(A) & (B), 208.13(b)(1)(ii)). Absent such rebuttal evidence, the petitioner is entitled to withholding of removal. *Kataria,* 232 F.3d at 1115; *Hernandez–Montiel,* 225 F.3d at 1099. Because no such rebuttal evidence was presented, remand is not appropriate, the presumption is unrebutted, and the petitioner is entitled to withholding of removal.

## IV

For these reasons, we grant the petition for review and grant withholding of removal. We remand to the Attorney General to exercise his discretion and determine whether to grant asylum.

Petition for Review GRANTED.