**Josefina SALAZAR–DE LEON, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 01–71768.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 2002.

Decided June 24, 2003.

Before: MCKEOWN, PAEZ, Circuit
Judges, and HAMILTON,* District Judge.

MEMORANDUM **

Josefina Salazar de Leon ("Salazar de Leon"), a native of Guatemala, petitions for review of the Board of Immigration Appeals's ("BIA") decision denying her applications for asylum and withholding of deportation. We remand in order to allow the BIA to assess the applications in light of current country conditions in Guatemala.

██ Because the parties are familiar with the facts and procedural history, we do not recount them here. We review the BIA's determination of purely legal questions *de novo*, but we uphold the BIA's factual determinations so long as they are supported by substantial evidence. *See, e.g., Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998); *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996) (en banc). An individual may qualify for asylum by either one of two methods: by showing severe past persecution, or, alternatively, by showing a well-founded fear of future persecution. *See Vongsakdy v. INS*, 171 F.3d 1203, 1206 (9th Cir.1999). We consider the BIA's denial of each ground in turn.

I.

We have held that an applicant may qualify for asylum based upon past persecution alone, recognizing that "sometimes past persecution is so horrific that the march of time and ebb and flow of political tides cannot efface the fear in the mind of the persecuted." *Lal v. INS*, 255 F.3d 998, 1009 (9th Cir.2001). The INS has codified this rule, and the current regulation reads: "Grant in the absence of well-founded fear of persecution. An applicant [who is not in danger of future persecution due to the changed circumstances in the country or the possibility of internal relocation] ... may be granted asylum, in the exercise of the decision maker's discretion, if: (A) The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution." 8 C.F.R. § 208.13(b)(1)(iii).

In order to determine whether Salazar de Leon qualifies for asylum under this provision, we must first consider whether there was past persecution. *See Lopez–Galarza v. INS*, 99 F.3d 954, 959–60 (9th Cir.1996). Salazar de Leon has clearly suffered past persecution. Her father and two brothers, with whom she lived, were dragged from their house and shot within her earshot while guerrillas threatened her and her children with death as they cowered on the floor. Her remaining four siblings have joined the 40,000 people who disappeared during Guatemala's civil war. Since that time, she has been compelled to live separately from her mother and her children, who attend school under false names in order to avoid further persecution. The persecution experienced by Salazar de Leon was committed by the guer-

---

* The Honorable Phyllis J. Hamilton, United States District Court Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

rillas, a force the government was clearly unable to control, on account of actual or imputed political opinion due to her family's unwillingness to aid the guerrillas.

However, our case law reflects an additional requirement, mandating that the persecution have been particularly severe or atrocious. *Id.* at 960–61; *but see Desir v. Ilchert,* 840 F.2d 723, 729 (9th Cir.1988) (concluding that beatings, arrests and harassment of a Haitian applicant for asylum constituted past persecution, which, "without more, satisfies the requirement of § 101(a)(42)(A), even independent of establishing a well-founded fear of future persecution"). Our cases on this topic are limited, and do not clearly establish what is sufficient to show severe past persecution. We have held that harassment and ostracism by teachers and fellow students do not suffice. *Kazlauskas v. INS,* 46 F.3d 902, 907 (9th Cir.1995). Nor do denial of educational opportunities, beatings by the police, and warrantless searches. *Marcu v. INS,* 147 F.3d 1078, 1082–83 (9th Cir. 1998). Similarly, past persecution was not sufficiently severe where petitioner's house was stoned, windows knocked out, and petitioner was once arrested after a demonstration and threatened with a twenty year sentence the next time. *Castillo–Villagra v. INS,* 972 F.2d 1017, 1022, 1031 (9th Cir.1992).

In contrast, we have held that "[r]ape at the hands of government authorities while imprisoned on account of one's political views can be an atrocious form of punishment indeed." *Lopez–Galarza,* 99 F.3d at 962; *see also Lal,* 255 F.3d at 1009–10 (holding that torture and sexual assault constitute severe past persecution). Lengthy imprisonment in a labor camp accompanied by torture and reeducation

compels a finding of past persecution sufficiently severe to justify relief on humanitarian grounds. *Vongsakdy,* 171 F.3d at 1207.

Although Salazar de Leon's experience was certainly sufficiently extreme to constitute persecution, it does not reflect the prolonged nature of abuse or particularly horrific outrages to the person that characterize those cases that have qualified under past persecution alone. Thus, we must go on to consider whether Salazar de Leon had a well-founded fear of persecution.[1]

## II.

Demonstration of a well-founded fear of persecution requires that an applicant prove that she has: (1) a subjective fear of persecution and (2) an objective basis for that fear. *Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998). Salazar de Leon's testimony regarding her ongoing fear establishes the subjective element of the claim. *Id.* As noted above, Salazar de Leon also clearly demonstrates past persecution, thus raising a presumption of an objective, or well-founded, fear of persecution. *Id.* at 967. The BIA found that the INS had overcome this presumption, concluding that Salazar de Leon could not show a well-founded fear of persecution because country conditions have changed in Guatemala as a result of the signing of peace accords between the guerrillas and the government in 1996, and so persecution is no longer likely. *Kazlauskas,* 46 F.3d at 906; 8 C.F.R. § 208.13(b)(1)(i)(A).

It is the INS's burden to show by a preponderance of the evidence that changed country conditions obviate the presumption of future persecution. *See, e.g., Ruano v. Ashcroft,* 301 F.3d 1155, 1161 (9th Cir.2002). In concluding that

1. We note that Salazar de Leon may qualify for a grant of asylum in the absence of a well-founded fear of persecution under 8 C.F.R.

§ 208.13(b)(1)(iii)(B). However, this issue was not addressed by the parties and, in any event, it must first be raised with the BIA.

the INS had met this burden, the BIA relied entirely upon the 1997 profile of asylum claims and country conditions for Guatemala. However, it is well established that "[i]nformation about general changes in the country is not sufficient." *Garrovillas,* 156 F.3d at 1017; *see also Ruano,* 301 F.3d at 1161; *Chand v. INS,* 222 F.3d 1066, 1079 (9th Cir.2000). Thus, the BIA erred as matter of law by failing to engage in an " 'individualized analysis' of how changed conditions will affect the specific petitioner's situation." *Garrovillas,* 156 F.3d at 1017.

Although the country profile unquestionably reflects that in 1997 there was a diminution in politically motivated killings and guerilla activity, it also shows that guerrillas continued to engage in death threats and killings, and described a high degree of instability in Guatemala, with ongoing tension between former guerrillas and paramilitary outfits. The BIA did not address the fact that death threats and killings were the reason for Salazar de Leon's flight in the first instance, or acknowledge that Salazar de Leon's uncle warned her that she would be in danger of death if she returned to Guatemala. Because the BIA failed to conduct an individualized analysis, the INS is unable to meet its burden of showing that Salazar de Leon's fear of persecution is not objectively reasonable. Moreover, as the Supreme Court recently held in *INS v. Ventura,* "remand could lead to the presentation of further evidence of current circumstances in Guatemala–evidence that may well prove enlightening given the five years that have elapsed since the report was written." 537 U.S. 12, 123 S.Ct. 353, 356, 154 L.Ed.2d 272 (2002). In light of the considerable evidence that exists of ongoing danger in Guatemala, *see, e.g.,* HUMAN RIGHTS WATCH WORLD REPORT 2002, *Guatemala* ("Guatemala made little progress in addressing persistent human rights problems...."); GUATEMALAN HUMAN RIGHTS COMMISSION/USA ANNUAL REPORT 2001–02 (noting that in 2003, human rights violations are increasing and clandestine violent groups have resurfaced), remand may prove important in determining whether Salazar de Leon possesses a well-founded fear of persecution as well as whether it is more likely than not that Salazar de Leon will experience persecution.

### III.

We remand Salazar de Leon's asylum and withholding of deportation claims to the BIA, with instructions to conduct an individualized analysis of changed country conditions. We note that the BIA may well wish to reopen the record to allow the introduction of evidence regarding current conditions in Guatemala. *See Ventura,* 123 S.Ct. at 356.

Petition GRANTED; REMANDED.