**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHAIKH ALI AHMED,

*Petitioner,*

v.

PETER D. KEISLER,* Acting
Attorney General,

*Respondent.*

No. 04-76246

Agency No.
A75-516-529

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 13, 2007—Pasadena, California

Filed October 16, 2007

Before: Harry Pregerson and Johnnie B. Rawlinson,
Circuit Judges, and Brian E. Sandoval,** District Judge.

Opinion by Judge Pregerson;
Dissent by Judge Rawlinson

---

*Peter D. Keisler is substituted for his predecessor, Alberto R. Gonzales, as Acting Attorney General of the United States, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

**The Honorable Brian E. Sandoval, United States District Judge for the District of Nevada, sitting by designation.

14035

## COUNSEL

Shameem Hasan, Hasan & Samson, Los Angeles, California, for the petitioner.

James E. Grimes, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

PREGERSON, Circuit Judge:

Petitioner Shaikh Ali Ahmed, a native of Bangladesh, appeals the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition for review.

## BACKGROUND

### I.  Factual Background

Petitioner Ahmed is a forty-eight-year-old native of Bangladesh. He is a Bihari, born in East Pakistan before it became Bangladesh. The Biharis sided with Pakistan against East Pakistan in the War of Independence in 1971. The Biharis consider themselves to be citizens of Pakistan and they hope to someday return to Pakistan. Biharis speak Urdu, the language of Pakistan, rather than Bengali, the language of Bangladesh. Pakistan has admitted only a few thousand Biharis — the remainder, approximately 250,000, live in Bangladesh.

After the Biharis' refusal to accept Bengali citizenship, the Bengali government removed them from their homes, confiscated their property and businesses, and relocated them to squalid, overcrowded resettlement camps. Ahmed testified that Biharis are virtual prisoners inside these camps; there is not enough food to sustain them, they are not allowed to work, and they do not have the right to travel within the country. Following the War of Independence, Ahmed lived in two settlement camps before coming to this country. From 1972 to 1984, Ahmed lived in Kalishpur Camp. From 1984 to 1994, Ahmed lived in Geneva Camp.

### A.  Events in Kalishpur Camp

In 1972, Ahmed, his older brother, and uncle, were captured and detained by the Bengali army. The army suspected Ahmed's uncle of having collaborated with Pakistan. During the detention, the army killed Ahmed's uncle in front of Ahmed. They also beat Ahmed and his brother. Ahmed's brother suffered a fractured hand and Ahmed has scars all over his body from the beating.

## B.    Events in Geneva Camp

### 1.    Civil Disobedience

After moving to Geneva Camp, Ahmed became politically active. He joined the Bihari organization Stranded Pakistani General Repatriation Committee ("SPGRC") in 1985, and became an assistant to Nassin Khan, the SPGRC's chief leader. In 1990, Ahmed organized a hunger strike. During the strike, the police arrived, took Ahmed into custody overnight, beat him, and released him the next day.

In 1991, Ahmed participated in a demonstration in front of the Pakistan Embassy. The demonstrators sat in a circle around the embassy, and they tried to give the Ambassador a memorandum requesting that he make arrangements to send them to Pakistan. When they were not allowed to enter the embassy, the demonstrators screamed and threw rocks. The police were called, and they fired guns and threw tear gas at the demonstrators. The demonstrators tried to run away but they were caught by police. Many demonstrators, including Ahmed, were beaten by the police. The police forced Ahmed to sign a statement saying that he would not organize in the future.

On December 26, 1994, Ahmed, together with the Bihari community in Geneva camp, participated in a demonstration. The community protested that they wanted to go to Pakistan because they "cannot live with this kind of living." The police arrived and tried to break up the demonstration. At one point, the demonstrators became angry with the police and started throwing stones. The police called for backup and fired guns and tear gas at the demonstrators. The police captured many demonstrators, including Ahmed, took them into custody, and beat them. The police released Ahmed the next day but threatened him with death should he ever protest again. Ahmed testified that, "if I ever try to say anything like this or try to speak then we will be killed in the police camp." After he was

released, Ahmed fled the camp, realizing that he was not safe and that he needed to leave the country. After four visits to the American Embassy, Ahmed succeeded in getting a visa. There is no evidence that Ahmed was violent or that he advocated violence at any of the three demonstrations.

### 2. Ahmed's Brother

Like Ahmed, his brother was politically active within the Bihari community. In 1993, the Awami League, a group opposing the ruling Bengali party, kidnaped Ahmed's brother.[1] Members of the Awami League had tried to force Ahmed's brother to provide them with Biharis to participate in a demonstration because they wanted to increase the number of demonstrators.[2] Ahmed's brother told the Awami League that he could not provide people for the rallies because the ruling party would get angry with the Biharis. The Awami League became increasingly angry with Ahmed's brother. One night they came to the camp with a truck and took Ahmed's brother. Ahmed never saw his brother again. Nassin Khan, the head of the SPGRC, asked the police commissioner for information about Ahmed's brother, hoping to find his body or where he had been killed. No information was ever given.

### C. Events in the United States

Ahmed came to this country on November 10, 1995, on a B-1 non-immigrant business visa with authorization to remain until November 9, 1996. Ahmed remained in the United States beyond this deadline and on April 15, 1998, he filed an

---

[1]At the time Ahmed testified, the Awami League was the ruling party.

[2]Ahmed testified that there are many political parties in Bangladesh, and when they have rallies, the political groups try to "recruit" people — like the Biharis — from different parts of Bangladesh to participate in the rallies to swell the numbers. These groups threaten to cut off the Bihari's food if they do not send people to the rallies, but the opposing parties get angry and threaten the Biharis if they do participate in the rallies.

application for asylum and for withholding of removal. In his application, Ahmed stated that he was stateless, that he had been persecuted in Bangladesh, and that his life was in danger because of his leadership role among Biharis.

## II.   Procedural History

### A.   Immigration Court

Following an interview with an asylum officer, the INS issued Ahmed a Notice to Appear, charging him with removability as an alien who remained in the United States longer than permitted. At a subsequent hearing on July 24, 1998, Ahmed conceded his removability and stated his intention to pursue asylum and withholding of removal. On October 5, 1998, an IJ issued an oral decision denying Ahmed's asylum and withholding of removal claims. The IJ stated that Ahmed's arrests at violent demonstrations did not constitute persecution. The IJ found that Ahmed was assimilated, that he was not stateless, and that he could live anywhere in Bangladesh because he speaks fluent Bengali. "Nobody would know that he's a Bihari unless he wants to let them know, since he's fluent in Bengali" and "nobody could tell by looking at him." The IJ concluded that Ahmed was a Bengali citizen.

Discussing the death of Ahmed's uncle, the IJ stated that Ahmed's uncle was believed to be a spy "or at least he was believed to be assisting the Pakistani army," and "we don't know the specific reasons why he was killed." The IJ recognized that Ahmed and his brother were severely beaten in connection with their uncle's death. The IJ also found that Ahmed's brother's kidnaping resulted from an argument with the Awami League and did not constitute persecution because the kidnaping was not an act supported by the government.

Finding that Ahmed had not suffered past persecution and had no well-founded fear of future persecution, the IJ denied Ahmed asylum and withholding of removal. The IJ found

Ahmed credible and had "no reason to believe . . . that he's undeserving of relief as a matter of discretion." However, finding that there were no "factors of a discretionary nature," he granted Ahmed sixty days to voluntarily depart — the maximum allowable period.

On June 14, 1999, Ahmed filed a motion to remand the case to an IJ so that Ahmed could apply for relief under the Convention Against Torture ("CAT").[3] The BIA granted Ahmed's motion on April 15, 2002. Hearings on remand were held on February 21, 2002, and August 4, 2003.[4] On August 4, 2003, a new IJ issued a decision regarding Ahmed's asylum, withholding of removal, and newly-added CAT claim. The IJ adopted the prior IJ's finding that Ahmed was not entitled to asylum relief or withholding of removal. The IJ denied Ahmed's CAT claim, finding that Ahmed failed to demonstrate that he would be tortured if returned to Bangladesh. The IJ found Ahmed to be credible and eligible for voluntary departure. Ahmed timely appealed to the BIA.

### B. BIA

On November 4, 2004, the BIA issued a brief per curiam order affirming the IJ's finding that Ahmed "failed to meet his burden of establishing past persecution or a well-founded fear of persecution on account of one of the statutorily protected grounds, or that it is more likely than not that he will be persecuted or subjected to torture upon his return to Bangladesh."

---

[3]Regulations implementing CAT were not promulgated until February 1999. *See* Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478 (Feb. 19, 1999). Under these regulations, aliens like Ahmed who were ordered removed before March 22, 1999, could move to reopen for the sole purpose of seeking CAT relief. *See* 8 C.F.R. § 208.18(b)(2) (2000).

[4]IJ Lawrence Burman issued the original decision in Ahmed's case. On remand, the case was heard by IJ Ira Bank because IJ Burman had been reassigned to a different immigration court.

The BIA then dismissed Ahmed's appeal. Ahmed timely appealed to this court.

## DISCUSSION

### I.  Standard of Review

Although the BIA's opinion did not expressly state whether it conducted a *de novo* review, its phrasing suggests that it conducted an independent review of the record. If that were the case, we would review the BIA's decision. *See Avetova-Elisseva v. INS*, 213 F.3d 1192, 1197 (9th Cir. 2000) (citing *Vongsakdy v. INS*, 171 F.3d 1203, 1206 (9th Cir. 1999)). But the lack of analysis that the BIA opinion devoted to the issue at hand — its simple statement of a conclusion — also suggests that the BIA gave significant weight to the IJ's findings. *See id.* In light of that ambiguity, we also look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion. *See id.*

We review for substantial evidence the decision that an applicant has not established eligibility for asylum. *See Njuguna v. Ashcroft*, 374 F.3d 765, 769 (9th Cir. 2004). We will uphold the BIA's asylum determination if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Knezevic v. Ashcroft*, 367 F.3d 1206, 1210-11 (9th Cir. 2004). Similarly, we review for substantial evidence the factual findings underlying the BIA's determination that Ahmed did not qualify for withholding of removal, *see Zehatye v. Gonzales*, 453 F.3d 1182, 1184-85 (9th Cir. 2006), and the BIA's finding that Ahmed is not eligible for protection under the Convention Against Torture, *see Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003).

## II. Asylum

### A. Applicable Legal Standard

To be eligible for asylum, Ahmed must establish that he is a refugee — namely, that he is unable or unwilling to return to Bangladesh "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[5] *Sael v. Ashcroft*, 386 F.3d 922, 924 (9th Cir. 2004); 8 U.S.C. § 1101(a)(42)(A). The source of the persecution must be the government or forces that the government is unwilling or unable to control. *See Mashiri v. Ashcroft*, 383 F.3d 1112, 1119 (9th Cir. 2004).

To be "well-founded," an asylum applicant's "fear of persecution must be both subjectively genuine and objectively reasonable." *Sael*, 386 F.3d at 924. "An applicant 'satisfies the subjective component by credibly testifying that [he] genuinely fears persecution.' " *Id.* (quoting *Mgoian v. INS*, 184 F.3d 1029, 1035 (9th Cir. 1999)). "The objective component can be established in two different ways." *Duarte de Guinac v. INS*, 179 F.3d 1156, 1159 (9th Cir. 1999).

---

[5]The fact that Petitioner is Bihari and consequently claims to be "stateless" does not, absent other factors, warrant a grant of asylum, as the Act explicitly contemplates asylum applicants with "no nationality." 8 U.S.C. § 1101(a)(42)(A); *see also Amin v. Ashcroft,* 388 F.3d 648, 651 (8th Cir. 2004) (noting that "statelessness . . . would not by itself be evidence of past persecution"). Such applicants are evaluated by referring to their country of last habitual residence. *See* 8 U.S.C. § 1101(a)(42)(A). Like other asylum applicants, Ahmed must demonstrate that he is "unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.*; *see also Faddoul v. INS*, 37 F.3d 185, 190 (5th Cir. 1994) (holding that "stateless individuals must demonstrate the same well-founded fear of persecution as those with nationalities").

One way to satisfy the objective component is to prove persecution in the past, giving rise to a rebuttable presumption that a well-founded fear of future persecution exists. The second way is to show a good reason to fear future persecution by adducing credible, direct, and specific evidence in the record of facts that would support a reasonable fear of persecution.

*Ladha v. INS*, 215 F.3d 889, 897 (9th Cir. 2000) (internal quotations and citations omitted). While a well-founded fear must be objectively reasonable, it "does not require certainty of persecution or even a probability of persecution." *Hoxha v. Ashcroft*, 319 F.3d 1179, 1184 (9th Cir. 2003). "Even a ten percent chance that the applicant will be persecuted in the future is enough to establish a well-founded fear." *Sael*, 386 F.3d at 925 (quoting *Knezevic*, 367 F.3d at 1212. We look at the totality of the circumstances in deciding whether a finding of persecution is compelled. *See Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998) ("The key question is whether, looking at the cumulative effect of all the incidents a petitioner has suffered, the treatment [he or] she received rises to the level of persecution.").

Because Ahmed testified credibly, he has satisfied the subjective component. *See Sael*, 386 F.3d at 924. Therefore, to demonstrate that he is eligible for asylum, he must satisfy the objective component by demonstrating past persecution or a well-founded fear of future persecution. *See Ladha*, 215 F.3d at 897.

### B. Analysis

#### 1. Past Persecution - Political Opinion

[1] Ahmed contends that he suffered persecution in Bangladesh on account of his political opinion. To demonstrate past persecution on account of a political opinion, Ahmed must

satisfy two requirements. First he must show that he held (or that his persecutors believed that he held) a political opinion. *See Navas v. INS*, 217 F.3d 646, 656 (9th Cir. 2000). Second, he must show that his persecutors persecuted him because of his political opinion. *See id.*

A political opinion encompasses more than electoral politics or formal political ideology or action. *See e.g. Al-Saher v. INS*, 268 F.3d 1143, 1146 (9th Cir. 2001) (recognizing that an applicant's statements regarding the unfair distribution of food in Iraq resulted in the imputation of an anti-government political opinion), *amended by* 355 F.3d 1140 (9th Cir. 2004). A political opinion can be an actual opinion held by the applicant, or an opinion imputed to him or her by the persecutor. *See Sangha v. INS*, 103 F.3d 1482, 1488-89 (9th Cir. 1997).

We find that substantial evidence does not support the IJ's finding that Ahmed failed to demonstrate past persecution. For the reasons set forth below, we hold that the record compels the finding that Ahmed was targeted and persecuted on account of his political opinion.

### a. Ahmed Raises a Claim for Persecution on Account of His Political Opinion

As an initial matter, the Government contends that Ahmed cannot assert that he was persecuted on account of his political opinion because Ahmed "disclaimed any political opinion other than a desire to move to Pakistan, and presented no evidence of political persecution." To support this assertion, the Government refers to Ahmed's testimony where the following exchange took place:

> IJ:          Okay. And, what is the political opinion that you were trying to express in the rallies and in the demonstrations in '91 and '93?

Ahmed:          We do not have any political opinion
                for Bangladesh. Our only main pro-
                test was to send us to Pakistan. We,
                we cannot live this kind of living. We
                cannot live in this way, and we just
                want some kind of arrangement to be
                made by which we can be sent to
                Pakistan.

In a similar vein, the IJ, in his oral decision, stated, "In fact,
there is no political opinion the Biharis have that's not shared
by the Bengali government. The Biharis want to leave and the
Bengalis want them to leave."

   **[2]** To suggest that either of these statements demonstrates
that Ahmed does not have a political opinion is disingenuous.
Ahmed has a definite political opinion — he believes that the
Biharis are treated very poorly in Bangladesh and he wishes
to leave Bangladesh for Pakistan. Ahmed's testimony may
have inartfully stated his position, but we do not think that it
can be interpreted as disavowing his claims that the govern-
ment and police "are trying to oppress us . . . when we try to
say something." Rather, it is because Ahmed makes no secret
of his beliefs and because he is an outspoken organizer and
leader of Biharis in refugee camps that he was beaten,
detained, and threatened. Thus, we reject the Government's
assertion that Ahmed does not raise a claim for past persecu-
tion on account of his political opinion.

### b.   Ahmed's Civil Disobedience

   There is no dispute that Ahmed was beaten and jailed by
the army and the police because of his participation in a hun-
ger strike and two political demonstrations. Ahmed was a
political organizer and leader in the SPGRC, and he did not
keep his political views a secret. Despite these facts, the IJ
found that Ahmed had not suffered past persecution.

His arrests at these violent demonstrations . . . is not persecution. The fact that the police beat the people that they had taken in custody is more of a reflection on police tactics in countries such as Bangladesh than it is any indication that he had any political opinion they wished to overcome, or any hatred they had toward the Biharis.

[3] There is no evidence in the record to suggest that Ahmed was violent at the protests or that he advocated violence. Ahmed testified that the protests began peacefully but became violent later on. He testified that the police beat him up for participating in a hunger strike; however, there is no evidence that Ahmed was violent during the strike. Ahmed testified that while demonstrating in front of the Pakistani embassy in 1991, "we circled it and we sat there," and "[we] tried to give the Ambassador . . . a memorandum." Although Ahmed testified that "stones were thrown towards the embassy," there is no evidence that Ahmed threw rocks at the embassy, that he was violent, or that he advocated violence.

Testifying about the third demonstration, Ahmed stated that he and the rest of the Bihari community, "all got together there, and we were having speeches and trying to see what we can do. We were swearing, and we were taking an oath what we are going to do," when the police came and removed the microphones.[6] Again, there is no evidence that Ahmed was violent at the demonstration or that he advocated violence. Ahmed testified that he told the police, "If you don't give us the freedom to speak today, then this very Bangladesh is going to become Pakistan again."[7] That was clearly a political

---

[6]The Government states that the protest involved "profanity," to underscore its assertion that the demonstration was violent before the police arrived. We believe it is a stretch to suggest that Ahmed's statement that the protestors were "swearing" and "taking oaths," constitutes "a large profanity-laced meeting." In any event, such language does not indicate *when* the violence began.

[7]The Government suggests that this statement caused the police to fire shots and tear gas on the demonstrators and that "[u]ndoubtedly, the police

statement, and after it was made, the police beat up Ahmed and other demonstrators and told Ahmed that he would be killed if he ever tried to organize or speak up again.

Ahmed testified, "they are trying to oppress us . . . when we try to say something," and as a result of his involvement with the demonstrations, he was beaten, detained, and threatened. With respect to all three demonstrations, there is no evidence in the record to suggest that Ahmed was violent, advocated violence, or did anything other than make political statements.

**[4]** Physical harm has consistently been treated as persecution. *See Duarte de Guinac*, 179 F.3d at 1161. Where an asylum applicant suffers such harm on more than one occasion, and, as in this case, is victimized at different times over a period of years, the cumulative effect of the harms is severe enough that no reasonable fact-finder could conclude that it did not rise to the level of persecution. *See Chand v. INS*, 222, F.3d 1066, 1074 (9th Cir. 2000); *Korablina*, 158 F.3d at 1044 (noting the cumulative effect of several instances of violence and harassment compel finding of persecution). Ahmed was the victim of violence on three occasions, on all of which he was beaten by the police or army. Here, the detentions, beatings, and threats that Ahmed was subjected to are disproportionate to Ahmed's activities.

Therefore, we find that Ahmed's suffering rises to the level of persecution. *See Fedunyak v. Gonzales*, 477 F.3d 1126,

---

did not take Ahmed's threat to overthrow the government lightly." The dissent agrees, saying that after his "not-so-veiled threat . . . it is not suprising that the police moved to restore order." Dissent at 14067. There is no evidence, however, that it was Ahmed's statement that prompted the police to fire shots or tear gas on the protestors. Further, given that Ahmed was clearly not in a position to overthrow the government and there is no evidence that Ahmed was armed, we question whether the police could be so concerned by Ahmed's statement that they were compelled to resort to violence.

1129 (9th Cir. 2007) (finding that beatings, and death threats made after petitioner voiced political opinion rose to the level of persecution); *Guo v. Ashcroft*, 361 F.3d 1194, 1197, 1203 (9th Cir. 2004) (finding that two arrests and repeated beatings constituted persecution); *Mamouzian v. Ashcroft*, 320 F.3d 1129, 1134 (9th Cir. 2004) (recognizing that repeated physical abuse combined with detention and threats constituted persecution); *Salaam v. INS*, 229 F.3d 1234, 1240 (9th Cir. 2000) (holding that politically active petitioner who had been arrested and tortured suffered persecution).

[5] Because Ahmed holds a political belief and he was persecuted for voicing his opinion, we find that Ahmed suffered persecution on account of a political opinion. *See Navas*, 217 F.3d at 656. Therefore, we find that the IJ's finding that Ahmed did not suffer past persecution on account of his involvement with "violent" protests is not supported by substantial evidence.[8]

### c.   Ahmed and His Uncle

[6] Ahmed's uncle was captured by the government and killed in 1972.[9] The IJ found that the uncle may have been

---

[8]The dissent argues that "the officers efforts to quell these riots did not constitute persecution, but an attempt to maintain the peace." Dissent at 14066. The record reflects the fact that the Biharis were completely peaceful during the first hunger strike in 1990, for which Ahmed was detained and beaten. It also reflects that during the 1994 demonstration, the police came to disrupt the demonstrations, which caused the violence to break out. This practice is confirmed by the Country Report for Bangladesh, which indicates that police corruption and abuse in Bangladesh are rampant and the police "frequently beat demonstrators."

[9]The dissent suggests that the proximity of his uncle's death to the 1971 war between West Pakistan and East Pakistan mitigates against a finding of persecution. Dissent at 14065 (arguing that "we have consistently held that confrontations, even deadly ones, that occur in the course of civil war or insurgency, are, unfortunately, expected consequences of civil conflict rather than persecution.") We disagree. Ahmed's uncle's killing was not

involved in espionage and therefore the government would have a legitimate interest in prosecuting him. However, the circumstances surrounding the uncle's death suggest that his death was politically motivated and not the product of legitimate prosecution.

Ordinary prosecution for criminal activity is generally not a ground for relief. *See Chanco v. INS*, 82 F.3d 298, 301 (9th Cir. 1996). However, as mentioned earlier, if the prosecution is motivated by a protected ground, and the punishment is sufficiently serious or disproportionate, the sanctions imposed can amount to persecution. *See Bandari v. INS*, 227 F.3d 1160, 1168 (9th Cir. 2000). Here, the army sought Ahmed's uncle because of his political opinion — he opposed the creation of an independent Bangladesh. The army also suspected Ahmed and his older brother, and all three were beaten. But regardless of Ahmed's beliefs at the time, the fact that Ahmed was beaten when captured with his uncle suggests that the army imputed to Ahmed his uncle's political opinion.[10] *See Sangha*, 103 F.3d at 1488-89.

---

during the course of a civil war, as the war ended in December 1971 and he was killed in 1972. Further, even though generalized violence as a result of civil strife does not necessarily qualify as persecution, neither does civil strife eliminate the possibility of persecution. *See Ndom v. Ashcroft,* 384 F.3d 743, 752 (9th Cir. 2004) ("At the same time, the existence of civil strife does not alter our normal approach to determining refugee status or make a particular asylum claim less compelling."). The relevant analysis is still whether the persecutor was motivated by one of five statutory grounds. Because Ahmed's uncle was beaten and killed after the war because of his suspected ties to an opposition group, we do not think it was merely the expected consequences of civil conflict.

[10]The dissent suggests that Ahmed was beaten because he tried to save his uncle's life, not because of Ahmed's political opinion. Though Ahmed did testify that he tried to stop the army from beating his uncle, he also testified that "they were suspicious about [his uncle], they were suspecting him of [collaborating with Pakistan] so along with him we, both brothers, were also taken." Based on this testimony, it is not reasonable to conclude that Ahmed's detention was not on account of his imputed political opinion. Further, this incident clearly would never have happened except for his family's political opinion. The fact that Ahmed attempted to stop his uncle from being killed does not change this fact.

**[7]** It seems rather unlikely that Ahmed's uncle, a Bihari refugee, would have the means or opportunity to "collaborate" with Pakistan. Nonetheless, Ahmed's uncle was killed in front of Ahmed — without a trial or any other form of due process — and Ahmed and his brother were beaten when they tried to prevent their uncle's death. The Country Report for Bangladesh states that police corruption and abuse is rampant.

> The Government frequently uses the police for political purposes. There is widespread police corruption and lack of discipline. Police officers committed numerous serious human rights abuses and were seldom disciplined, even for the most egregious actions.
> . . . Police committed a number of extrajudicial killings, and some persons died in police custody under suspicious circumstances. Police routinely used torture, beatings, and other forms of abuse while interrogating suspects. . . . The Government rarely punishes persons responsible for torture or unlawful deaths.

Thus, even if Ahmed's uncle had collaborated with the Pakistanis, the facts that Ahmed's uncle was killed and Ahmed and his brother were severely beaten by the army suggest persecution on account of a political opinion. *See Navas*, 217 F.3d at 656.

**[8]** That Ahmed was beaten absent any due process also supports his claim of persecution on account of a political opinion. *See Miranda Alvarado v. Gonzales*, 449 F.3d 915, 930-31 (9th Cir. 2006) ("We have repeatedly held that persecution in the absence of any legitimate criminal prosecution, conducted at least in part on account of political opinion constitutes persecution on account of political opinion, even if the persecution served intelligence-gathering purposes.") (internal citation omitted); *Ndom v. Ashcroft*, 384 F.3d 743, 755 (9th Cir. 2004) ("[E]ven if the government authorities' motivation

for detaining and mistreating [an applicant] was partially for reasons of security, persecution in the absence of any legitimate criminal prosecution, conducted at least in part on account of political opinion, provides a proper basis for asylum and withholding of deportation, even if the persecution served intelligence gathering purposes.") (internal quotations and alternations omitted); *Navas*, 217 F.3d at 660 ("If there is no evidence of a legitimate prosecutorial purpose for a government's harassment of a person . . . there arises a presumption that the motive for harassment is political.").

**[9]** In sum, the facts that Ahmed was beaten because of his political opinion, or an opinion imputed to him, and that he was abused by the police absent any due process protections, support his contention that he suffered past persecution. *See Navas*, 217 F.3d at 656; *Sangha*, 103 F.3d at 1488-89. Further, that Ahmed's uncle was captured and killed by the government provides further support to Ahmed's claim of past persecution. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1074-75 (9th Cir. 2004) ("Violence directed against an applicant's family members provides support for a claim of persecution and in some instances is sufficient to establish persecution because such evidence may well show that [an applicant's] fear . . . of persecution is well founded.") (internal quotation and citation omitted). Thus, we find that this event supports Ahmed's asylum claim.

### d. Ahmed's Brother

Like Ahmed, his brother was politically active and an organizer in the Bihari community. He was kidnaped by members of the Awami League because he refused to provide Bihari supporters to attend the Awami League's opposition rallies. Ahmed's brother did not want to provide supporters because the government would withhold food from the camp. Ahmed's brother's refusal to cooperate with the Awami League was based, at least in part, on a political opinion (i.e., the brother did not want to anger the government and possibly

lose food for the camp.) Ahmed's brother took a political position opposing the Awami League, and he was kidnaped (and presumably killed) as a result. There is no evidence that the perpetrators were ever prosecuted by the Bangladesh government.

[10] The IJ found that these events do not constitute persecution because the perpetrators were the Awami League, not the Government, and "one can't think of any reason why the government would want to assist an opposition party recruit additional people for their opposition rallies." However, Ahmed is not required to show persecution from the government; acts of harassment or violence perpetrated by an entity that the government fails to control can constitute evidence of persecution. *See Korablina*, 158 F.3d at 1044. There is no dispute that Ahmed's brother was kidnaped by the Awami League.[11] The record suggests that Bangladesh's government does not administer the camps, and there is no control over who goes into and out of the camps. The government's unwillingness or inability to control the actions of private parties — namely, the Awami League — inside or near the camps, supports Ahmed's asylum claim. *See Singh v. INS*, 94 F.3d 1353, 1359 (9th Cir. 1996) (noting that government inaction in the face of persecution by private groups that the government is unwilling or unable to control may support a claim for asylum). Further, we find the fact that Ahmed's brother

---

[11]The dissent adopts the IJ's assertion that Ahmed's brother was kidnaped and killed because the Awami League got angry with him, not because of his political opinion. Ahmed did testify that his brother got in an argument with the Awami League representatives. This does not, however, undercut Ahmed's contention that his brother was taken because his brother refused to provide Bihari people for the Awami League demonstration. The two explanations for the kidnaping are not mutually exclusive. The record reflects that the Awami League was angry at Ahmed's brother *because* he would not organize Biharis to participate in their political rally. Regardless of whether they became angry with him before they kidnaped him, the reason he was kidnaped was that he stood up to the Awami League and refused to support them.

was captured and presumably killed by the Awami League provides additional support for Ahmed's claim of past persecution. *See Baballah*, 367 F.3d at 1074-75 (recognizing that violence directed against an applicant's family members provides support for a claim of persecution).

### 2.  *Future Persecution*

#### a.  *Political Opinion*

To demonstrate a fear of future persecution on account of a political opinion, an asylum applicant must show (1) that he holds a political opinion; (2) that his political opinion is known to his persecutors; and (3) that the persecution will be on account of his political opinion. *See Gonzales-Neyra*, 122 F.3d at 1296. A ten percent chance that an applicant will be persecuted in the future is enough to establish a well-founded fear of future persecution. *See Sael*, 386 F.3d at 925.

[11] However, proof of past persecution gives rise to a presumption of a well-founded fear of future persecution and shifts the evidentiary burden to the government to rebut that presumption.[12] *See, e.g. Popova v. INS*, 273 F.3d 1251, 1259 (9th Cir. 2001); *see also* 8 C.F.R. § 208.13(b)(1)(i). The presumption can be rebutted with a showing:

> (1) that there has been a fundamental change in circumstances such that the applicant no longer has a

---

[12]Even if Ahmed did not establish past persecution, he satisfies the lower ten percent standard for showing that he has a well-founded fear of future persecution. *See Sael*, 386 F.3d at 935. First, Ahmed holds a political opinion. Second, he was persecuted (arrested, beaten, and threatened with death) by the army and police because of his political opinion. Finally, the police told him that they will kill him should he participate in another protest, and Ahmed's uncle and brother were kidnaped and/or killed because of their political opinions. Thus, Ahmed has satisfied the three requirements to demonstrate a well-founded fear of future persecution. *See Gonzales-Neyra*, 122 F.3d at 1296.

well-founded fear of persecution in Bangladesh on account of his political opinion; or (2) that petitioner can avoid future persecution by relocating to another part Bangladesh and, under all the circumstances, it would be reasonable to expect the applicant to do so.

*See* 8 C.F.R. § 208.13(b)(1).

**[12]** In this case, the Government failed to show a change in country conditions that would overcome the presumption. The Bangladesh Country Report contains numerous references to police abuses and the government's inability, or unwillingness, to crack down on these abuses or punish the perpetrators. Nor has the Government shown that life in the Bihari camps has improved. In addition, it is not reasonable to expect that Ahmed would be able to relocate to another part of Bangladesh. Although, as the IJ noted, Ahmed does speak Bengali and that "nobody could tell by looking at him" that Ahmed was a Bihari, nothing suggests that Ahmed could *legally* live in another part of Bangladesh. Bahiris were forced to give up their property in the early 1970s and are not allowed to hold jobs. Ahmed could only exist outside of the camp if he pretended not to be a Bihari. The IJ also "found" that Ahmed is a citizen of Bangladesh. However, there is no evidence to support this finding; it is conjecture and "cannot substitute for substantial evidence." *Karouni*, 399 F.3d at 1177.

**[13]** Finally, Ahmed is a leader in the Bihari community and an outspoken member of the SPGRC who is committed to participating in dissident activities if forced to return to Bangladesh. The INA does not require Ahmed to change "an innate characteristic . . . so fundamental," *Hernandez-Montiel v. INS*, 225 F.3d 1084, 1094 (9th Cir. 2000), or to relinquish such an "integral part of [his] human freedom," *Lawrence v. Texas*, 539 U.S. 558, 577 (2003). Because Ahmed's fear of persecution is based, in part, on his status as a politically active Bihari, and he cannot be required to suppress his politi-

cal interests and activities, it is unreasonable to expect that Ahmed would be able to secretly live elsewhere in Bangladesh. *See Karouni*, 399 F.3d at 1173.

**[14]** For these reasons, we find that Ahmed has a well-founded and unrebutted fear of future persecution on account of his political opinion.

### b.   Social Group

Ahmed also contends that he has a well-founded fear of future persecution in Bangladesh because he is a Bihari. "[A] 'particular social group' is one united by a voluntary association, including a former association, or by an innate characteristic that is so fundamental to the identities or consciences of its members that members either cannot or should not be required to change it." *Karouni*, 299 F.3d at 1171 (quoting *Hernandez-Montiel*, 225 F.3d at 1093). The IJ found that Ahmed is part of a definite social group.

> This group is defined as Bihari, and I do find that they are a particular social group. In fact, I don't think that there's much doubt about that. The Biharis have wished nothing other than to go to Pakistan, the problem is that Pakistan actually doesn't want them.

**[15]** Ahmed can demonstrate a well-founded fear of future persecution on account of his social group by showing that "he is a member of a 'disfavored group' coupled with a showing that he, in particular, is likely to be targeted as a member of that group." *Sael*, 386 F.3d at 925 (quoting *Mgoian v. INS*, 184 F.3d 1029, 1035, n.4 (9th Cir. 1999)); *see also Kotasz*, 31 F.3d at 853. The requirements that an alien be a member of a "disfavored group" and that he faces an individualized risk of being singled out for persecution, work together. *See Sael*, 386 F.3d at 925.

**[16]** It appears that Biharis are a disfavored group in Bangladesh. They are required by the government to live in

squalid refugee camps with no electricity, no sanitation, and little food. Although these substandard living conditions may be common throughout Bangladesh, it is significant that the government withholds food from Biharis if they support opposition political rallies. Ahmed testified that Bihari land, property, and businesses were confiscated, and Biharis were removed from their homes in the early 1970s. Ahmed also testified that the government refused to allow Ahmed and other Biharis to leave the country to travel to Korea to work as laborers. Thus, it appears that Biharis face ill treatment by the government due simply to their status as Biharis. *See Ballabah*, 367 F.3d at 1076 (finding that substantial economic deprivation that constitutes a threat to life or freedom may constitute persecution); *Tawadras v. Ashcroft*, 364 F.3d 1099, 1106 (9th Cir. 2004).

**[17]** With respect to the second requirement, Ahmed was beaten, detained, and threatened because he is a leader and organizer in the SPGRC. Ahmed testified that if he is forced to return to Bangladesh, he will continue to be a dissident and represent the Biharis. As mentioned earlier, asylum seekers are not required to change immutable characteristics or to abandon their beliefs simply to avoid future persecution. *See Karouni*, 399 F.3d at 1173. Consequently, Ahmed will be more likely to be singled out for persecution than other Biharis. Because Ahmed has shown that he is part of a "disfavored group" and that he is "likely to be targeted as a member of that group," we find that Ahmed has demonstrated a well-founded fear of future persecution on account of his social group. *Sael*, 386 F.3d at 925.

## Conclusion

**[18]** Because Ahmed credibly testified that he suffered past persecution on account of his political opinion and social group, and because there is more than a ten percent chance that if returned to Bangladesh he will suffer future persecution on account of his political opinion or social group, we find

that Ahmed is statutorily eligible for asylum. Reversal of the IJ's denial of Ahmed's asylum application is warranted because "the evidence would compel any reasonable fact-finder to conclude that the requisite fear of persecution has been shown." *Navas*, 217 F.3d at 657; *see also Kahssai v. INS*, 16 F.3d 323, 329 (9th Cir. 1994).

### III. Withholding of Deportation

#### A. Applicable Legal Standard

An applicant is entitled to withholding of deportation if he or she can establish a "clear probability," *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987), that his "life or freedom would be threatened" upon return because of his "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A). This "clear probability" standard, interpreted as meaning "more likely than not," is more stringent than asylum's "well-founded fear" standard because withholding of deportation is a mandatory form of relief. *Navas*, 217 F.3d at 655. "Unlike asylum, withholding of removal is not discretionary. The Attorney General is not permitted to deport an alien to a country where his life or freedom would be threatened on account of" one of the protected grounds. *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001).

Past persecution generates a presumption of eligibility for withholding of removal. *See Ballabah*, 367 F.3d at 1079; *Kataria v. INS*, 232 f.3d 1107, 1115 (9th Cir. 2000). Because Ahmed has established that he suffered past persecution, the Government must show, by a preponderance of evidence, that country conditions have so changed that it is no longer more likely than not that Ahmed would be persecuted should he be forced to return, or that he reasonably could be expected to relocate to another part of Bangladesh to avoid future threats to life or freedom. *See* 8 C.F.R. § 208.16(b)(2); *Navas*, 217 F.3d at 657.

***B.   Analysis***

We find that Ahmed's testimony not only "compel[s] any reasonable factfinder to conclude" that he faces at least a ten percent chance of future persecution, but also establishes that it is "more likely than not" that he faces a "clear probability" of persecution if removed. *Navas*, 217 F.3d at 655, 657. The Government has not shown a fundamental change in circumstances. Ahmed is a leader in the Bihari community and an outspoken member of the SPGRC who is committed to participating in dissident activities. He cannot be forced to suppress his political interests and activities, *see Karouni*, 399 F.3d at 1173, and if forced to return to Bangladesh, he will continue to organize and participate in demonstrations, despite the police death threat. Therefore, it is more likely than not that if forced to return to Bangladesh, Ahmed will be persecuted by the police or the government. Further, as discussed above, it is unreasonable to expect that Ahmed can relocate within Bangladesh to avoid future threats. It is unreasonable to expect that Ahmed would be able to live elsewhere in Bangladesh because Biharis cannot own property and are forced to live in camps. Nor is it reasonable to expect Ahmed to live in total secret outside of the camps and away from his friends and remaining family.

**[19]** Having shown an unrebutted presumption of entitlement to withholding of removal, we hold that the IJ's finding that Ahmed was not entitled to withholding of removal is not supported by substantial evidence. *See Zehatye*, 453 F.3d at 1184-85.

**IV.   CAT Relief**

Ahmed contends that he is entitled to relief under CAT. To qualify for CAT relief, Ahmed must establish that it is more likely than not that he would be tortured if removed to Bangladesh. *See Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004). " 'Torture is an extreme form of cruel and inhuman

treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.' " *Al-Saher v. INS*, 268 F.3d 1143, 1147 (9th Cir. 2001) (quoting 8 C.F.R. § 208.18(a)(2)), *amended by,* 355 F.3d 1140 (9th Cir. 2004). Torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind . . . .

*Kamalthas v. INS*, 251 F.3d 1279, 1282 (9th Cir. 2001) (quoting 8 C.F.R. § 208.18(a)(1) (2000)). Country conditions evidence can play a decisive role in determining eligibility for relief under CAT. *See id.* at 1282-83. Ahmed bears the burden of presenting evidence to establish "substantial grounds for believing that [he] would be in danger of being subjected to torture in the country of removal." *Id.* at 1284 (internal quotation marks omitted). We review the factual findings underlying the IJ's denial of relief under the CAT for substantial evidence. *See Zheng*, 332 F.3d at 1193.

**[20]** The evidence in the record compels a finding that it is more likely than not that Ahmed will be *persecuted* if returned to Bangladesh, and Ahmed has offered evidence, if less pronounced, suggesting the likelihood of future harm. While in Bangladesh, Ahmed was taken into custody and beaten on four occasions (once while with his brother and uncle, and three times after participating in protests). Though certainly forms of persecution, it is not clear that these actions would rise to the level of torture.

**[21]** Because the evidence does not demonstrate that it is more likely than not that Ahmed will be tortured if returned

to Bangladesh, we find that CAT relief is not appropriate. *See Hasan v. Ashcroft*, 380 F.3d 1114, 1120-23 (9th Cir. 2004); 8 C.F.R. § 208.16(c)(2). Accordingly, we find that substantial evidence supports the IJ's determination that Ahmed is not eligible for CAT relief.

## CONCLUSION

For the reasons set forth above, we grant Ahmed's petition for review.

PETITION GRANTED.

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent, as I cannot agree that the evidence in this case compels a finding of persecution. *See Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (en banc) (requiring affirmance of the BIA unless "the evidence not only supports, but compels" reversal) (citation omitted). As we have repeatedly held, persecution is an "extreme concept," characterized by "the infliction of suffering or harm upon those who differ . . . in a way regarded as offensive." *Kohli v. Gonzales*, 473 F.3d 1061, 1070 (9th Cir. 2007) (citation omitted). The facts of this case simply do not compel us to fit Ahmed's claims within that characterization.

The majority opinion cites three bases supporting its holding that a conclusion of persecution is compelled. The first is the killing of Ahmed's uncle and the beating of Ahmed and his brother. The second is the punishment inflicted on Ahmed as a result of his participation in unauthorized demonstrations. The third is the disappearance of Ahmed's brother following an argument between the brother and members of an opposition group. I will explain why the majority's reliance on these bases is misplaced.

### 1.   The Killing of Ahmed's Uncle

As the majority opinion recognizes, Majority Opinion, p. 14040, Ahmed's uncle was suspected of collaborating with Pakistan during the Bangladesh war for independence from Pakistan. This fact itself militates against a compelled finding of persecution. We have consistently held that confrontations, even deadly ones, that occur in the course of civil war or insurgency are, unfortunately, expected consequences of civil conflict rather than persecution. *See Miranda Alvarado v. Gonzales*, 449 F.3d 915, 931 (9th Cir. 2006), *as amended* ("[I]njury inflicted by opposing political or other groups on each other during a civil conflict will not necessarily equate to persecution on account of one of the . . . protected grounds."); *Ndom v. Ashcroft*, 384 F.3d 743, 752-53 (9th Cir. 2004) (noting that "the existence of civil war . . . by itself, does not establish eligibility for asylum . . ." and this court has "found no persecution despite civil strife" when an applicant fails to establish "that his or her persecutor was motivated by one of the five statutory grounds") (citations omitted). Ahmed and his brother were beaten when they interceded on behalf of their uncle. Despite their good intentions, they were unable to "save" their uncle from the soldiers. However, Ahmed and his brother were beaten, not because of their political views or their ethnicity, but because they interfered with the soldier's punishment of a suspected enemy collaborator. Although we might abhor the atrocities of war, that abhorrence does not translate into a compelled finding of persecution. *See Miranda Alvarado*, 449 F.3d at 932 (citing with approval language of a BIA decision holding that harm resulting "incidentally from behavior directed at another goal, the overthrow of a government or, alternatively, the defense of that government against an opponent, is not persecution") (citation omitted). The IJ's conclusion that these events did not rise to the level of persecution is supported by substantial evidence as discussed above. *See Ibarra-Flores v. Gonzales*, 439 F.3d 614, 618 (9th Cir. 2006) (recognizing that we review for substantial evidence, *i.e.*, "such relevant evidence as a rea-

sonable mind might accept as adequate to support a conclusion.") (citation omitted). The IJ's finding is also bolstered by the fact that for a period of 18 years — between 1972 and 1990 — Ahmed experienced no problems with the Bengali military.

The majority opinion implicitly acknowledges the weakness of Ahmed's persecution claim where it states that "the fact that Ahmed was beaten when captured with his uncle *suggests* that the army imputed to Ahmed his uncle's political opinion." Majority Opinion, p. 14053. However, more than a suggestion is needed to countervene the Immigration Judge's (IJ) finding. Indeed, a suggestion falls far short of the compelling evidence required to overturn the IJ's finding. *Lolong*, 484 F.3d at 1178 (acknowledging that the evidence must compel reversal).

### 2. Ahmed's Participation in Demonstrations

As an initial matter, it should be noted that the majority opinion's description of the events in question as demonstrations is somewhat euphemistic. In fact, Ahmed himself testified that the gatherings degenerated into riots, with stones being thrown at police officers. The officers' efforts to quell these riots did not constitute persecution, but an attempt to maintain the peace. *See Fisher v. INS*, 79 F.3d 955, 961-62 (9th Cir. 1996) (en banc) (holding that Iranian woman failed to demonstrate a well-founded fear of persecution despite multiple arrests for violating Islamic laws because, without showing selective enforcement, "disproportionately severe punishment" or "pretextual prosecution", she had merely established that she "face[d] a possibility of prosecution for an act deemed criminal in Iranian society") (citation omitted).

Adding to the fact that the gatherings became riotous was Ahmed's testimony that the protestors had been told that any protests must be confined inside the camp rather than outside the camp borders. When the protestors defied those orders and

when Ahmed made the not-so-veiled threat that "if you don't give us the freedom to speak today [then] this very Bangladesh is going to become Pakistan again", it is not surprising that the police moved to restore order. That the police used force in restoring order does not compel a finding of persecution.

## 3.   The Disappearance of Ahmed's Brother

The IJ's finding that the disappearance of Ahmed's brother does not bolster his claim of persecution is supported by substantial evidence. Ahmed himself testified that his brother was taken, not because of his political opinion, but because the Awami League members "got angry [with his] brother and they had an argument with him, not with the others." This evidence simply does not compel a finding that Ahmed's brother was taken away because of his political opinion.

When this case is considered under the deferential standard we must apply, Ahmed's petition fails to meet the requirements for asylum. *See Gu v. Gonzales*, 454 F.3d 1014, 1019 (9th Cir. 2006) (requiring a showing of persecution to be eligible for asylum). That failure also dooms Ahmed's request for withholding of removal. *See Fisher*, 79 F.3d at 965 (holding that "failure to satisfy the lesser standard of proof required to establish eligibility for asylum" necessarily results in failure "to demonstrate eligibility for withholding of deportation") (citation omitted).

Because substantial evidence supports the IJ's finding of no persecution, I would deny Ahmed's petition.