Mayak STEPANIAN, Petitioner,

v.

Eric H. HOLDER Jr., Attorney General, Respondent.

No. 05–74308.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2009.

Filed Sept. 1, 2009.

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

**378**

---

Areg Kazaryan, Law Offices of Areg Kazaryan, Glendale, CA, Sassoun Nalbandian, Law Offices of Sassoun A. Nalbandian, Valley Village, CA, for Petitioner.

CAC–District Counsel, Esquire, Office of the District Counsel Department of Homeland Security, Los Angeles, CA, Robert K. Cassibry, Esquire, United States Department of Justice, Columbia, SC, Shelley Goad, Senior Litigation Counsel, William Charles Peachey, Senior Litigation Counsel, Jem C. Sponzo, Esquire, DOJ—U.S. Department of Justice, Washington, DC, Ronald E. Lefevre, Office of the District Counsel Department of Homeland Security, San Francisco, CA, for Respondent.

Before: WARDLAW, RAWLINSON, and N.R. SMITH, Circuit Judges.

## MEMORANDUM *

Mayak Stepanian, a native of Iran and an adherent of the Armenian Christian faith, appeals from the Board of Immigration Appeals' ("BIA") affirmance of the Immigration Judge's ("IJ") order denying

asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252 and we vacate and remand to the BIA for clarification.

1. We cannot meaningfully review the BIA's decision because the BIA is unclear as to the standard of review it applies to the IJ's decision. The BIA first purports to review the IJ's decision for clear error. In such cases, "we review ... the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's oral decision in support of those reasons." *Tekle v. Mukasey,* 533 F.3d 1044, 1051 (9th Cir.2008). The BIA also cites *Matter of Burbano,* 20 I. & N. Dec. 872 (BIA 1994), however, which suggests that the BIA "adopts the IJ's decision in its entirety," *Arreguin–Moreno v. Mukasey,* 511 F.3d 1229, 1232 (9th Cir.2008) (internal quotation marks omitted), and which means that "we review the IJ's decision as if it were that of the BIA," *Abebe v. Gonzales,* 432 F.3d 1037, 1039 (9th Cir.2005) (en banc) (internal quotation marks omitted). Here, the BIA fails to mention the singular ground on which the IJ denied the petition—the adverse credibility finding. If the BIA conducted an independent review, because it was "silent on the issue of credibility, despite an IJ's explicit adverse credibility finding, we may presume that the BIA found the petitioner to be credible." *Krotova v. Gonzales,* 416 F.3d 1080, 1084 (9th Cir.2005). If the BIA adopted the IJ's decision under *Burbano,* we would review the IJ's adverse credibility finding instead. *See Abebe,* 432 F.3d at 1040. Such inconsistencies prevent adequate appellate review and require clarification.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

2. The incongruity with respect to the standard of review must be viewed in light of the other errors plaguing the BIA's decision. The BIA noted Stepanian's country of removal as Armenia, not Iran, and cited to the Uganda Country Report, not the Iran Country Report. Even if we were to credit the government's description of these as typographical errors—and overcome concerns regarding boilerplate opinions, *see Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir.1995)—it remains that the BIA may have fundamentally misunderstood the IJ's decision. The IJ expressly based its adverse credibility finding only on the inconsistency regarding where the police struck Stepanian and explicitly disavowed a credibility finding based upon the inadmissibility of corroborating documents. In contrast, the BIA expressly relies on the "lack of credible corroborating documents" as support for the IJ's decision. Without acknowledging this inconsistency, the BIA specifically cites the page of the IJ's decision on which the IJ declined reliance on a lack of corroborating documents. *Cf. Abebe*, 432 F.3d at 1040 ("If the BIA intends to constrict the scope of its opinion to apply to only one ground upon which the IJ's decision rested, the BIA can and should specifically state that it is so limiting its opinion."). Further, the government's belated suggestion at oral argument that we read the BIA's and the IJ's decisions together—the approach we have taken in other cases in which the standard of review chosen by the BIA was unclear, *see Ahmed v. Keisler*, 504 F.3d 1183, 1190–91 (9th Cir.2007)—is practically unworkable in light of such irreconcilable differences. On remand, the BIA must choose a standard of review and must "provide a comprehensible reason for its decision sufficient for us to conduct our review and to be assured that the petition-

er's case received individualized attention." *Ghaly*, 58 F.3d at 1430.

**VACATED AND REMANDED.**

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. Although the Board of Immigration Appeals' (BIA) decision was not a model of clarity, it was clear enough to allow meaningful review by this court. I am not particularly troubled by the BIA's prefatory reference to the clear error standard of review. Indeed, that very reference answers one of the criticisms articulated by the majority—that the BIA failed to mention the Immigration Judge's (IJ) adverse credibility determination. The BIA's citation to 8 C.F.R. § 1003.1(d)(3) (providing that the Board views credibility finding for clear error) and *Matter of A–S*, 21 I. & N. Dec. 1106, 1109 (BIA 1998) (same) is an obvious reference to the standard the BIA applies when it reviews the IJ's adverse credibility determination. Unlike the majority, I see nothing inappropriate in the BIA articulating the standard of review, determining that the standard has been satisfied and adopting the IJ's decision.

The majority disposition also mentions the erroneous listing of Armenia as the country of removal and mistaken citation to the Uganda Country Report. However, the Petitioner did not rely on the erroneous listing of Armenia as the country of removal as a basis for relief. Moreover, in addressing the country report citation, Petitioner merely argued that "*[i]f* the BIA *actually considered* the Uganda country report" it erred. (Emphases added). But we know that the BIA did not actually consider the Uganda report because the exhibit referenced by the BIA corresponded to the Iran Country Report in the record.

Finally, I disagree that "irreconcilable differences" preclude our reading the BIA's and IJ's decisions together. The BIA's adoption of the IJ's adverse credibility determination can be reviewed without considering the lack of credible corroborating documents. Indeed, in the very case cited by the majority, *Ahmed v. Keisler,* 504 F.3d 1183, 1190–91 (9th Cir.2007), we expressly held that where the BIA's phrasing suggests one standard of review and its analysis of the issue-or lack of analysis-suggests another standard, we look to the IJ's decision to inform our review.

In this case, the IJ's adverse credibility determination rested on the discrepancy about whether the Petitioner was hit in the face or in the stomach. Because this discrepancy goes to the heart of the Petitioner's claim, it supports the adverse credibility determination. *See Dhital v. Mukasey,* 532 F.3d 1044, 1051 (9th Cir.2008) (holding that substantial evidence supports an adverse credibility determination when there is an inconsistency "concern[ing] events central to his version of why he was persecuted and fled" Iran) (citation omitted).

For these reasons, I would deny the petition.