NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 11 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ZHANWEN YU,

          Petitioner,

  v.

JEFFREY A. ROSEN, Acting Attorney
General,

          Respondent.

No. 16-70089

Agency No. A087-808-702

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 10, 2020**
Pasadena, California

Before: O'SCANNLAIN and OWENS, Circuit Judges, and KENNELLY,***
District Judge.
Partial Concurrence and Partial Dissent by Judge KENNELLY

    Zhanwen Yu petitions for review of an order by the Board of Immigration

---

    *      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    **      The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

    ***      The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

Appeals (BIA) dismissing his appeal from a denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). As the facts are known to the parties, we repeat them only as necessary to explain our decision.

I

Substantial evidence supports the BIA's conclusion that Yu did not show past persecution in China on account of a political opinion. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1).

A

The record does not compel the conclusion that Yu suffered past persecution. "Persecution is an extreme concept," *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir. 1996), which is evidenced by "repeated, lengthy and severe harassment," *Gu v. Gonzales*, 454 F.3d 1014, 1020 (9th Cir. 2006). Yu did not show repeated or lengthy harassment. Yu's detention lasted seven days, but it was an isolated episode, and he was interrogated only twice during that span. *See Prasad v. INS*, 47 F.3d 336, 339 (9th Cir. 1995). Nor did Yu show severe harassment. Yu was beaten, but he described his injuries as "skin level," and he did not require medical attention. *See Gu*, 454 F.3d at 1020; *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003); *Prasad*, 47 F.3d at 339. After his release from detention, Yu experienced no further mistreatment by the police. *See Gu*, 454 F.3d at 1020.

Accordingly, the BIA did not err in finding that Yu's mistreatment did not rise to the level of persecution. *See Gu*, 454 F.3d at 1019–21.

B

The record does not compel the conclusion that Yu was mistreated on account of a political opinion. Yu testified that he and the other factory workers protested the loss of their jobs. They shouted, "[W]e want work, we want food, our children want to go to school." But the record does not show, for example, that Yu expressed "opposition to broad forms of governmental corruption [that] may evince a political opinion" or that he took "concrete steps to expose corruption." *Singh v. Barr*, 935 F.3d 822, 825, 826 (9th Cir. 2019). While Yu testified that he hates Communist rule, no evidence shows the police knew of any political view he held or imputed one to him. *See Kozulin v. INS*, 218 F.3d 1112, 1115 (9th Cir. 2000). Instead, the police interrogation focused on Yu's participation in an illegal gathering. *See Chanco v. INS*, 82 F.3d 298, 302 (9th Cir. 1996) (holding that prosecution of illegal acts was not due to petitioner's political opinion); *Abedini v. INS*, 971 F.2d 188, 191 (9th Cir. 1992). Consequently, Yu did not show "that the persecutor was motivated by a belief that the petitioner held the political opinion." *Singh*, 935 at 825 (emphasis omitted) (citation omitted).

II

Substantial evidence supports the BIA's conclusion that Yu did not show he

has a well-founded fear of future persecution. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(2). Yu must show his fear is "objectively reasonable" based on "credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Ghaly v. INS*, 58 F.3d 1425, 1428 (9th Cir. 1995) (citation omitted). After his release from detention, Yu lived in China for at least two months unharmed even though he did not report to the police every week as they requested. *See Gu*, 454 F.3d at 1020; *Lata v. INS*, 204 F.3d 1241, 1245 (9th Cir. 2000). The government did not revoke Yu's passport, and he left freely. Yu does not claim that any member of his family has been threatened or harmed by the police since he left. *See Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001). Although Yu's wife said that the police were looking for him, that fact was "the product of hearsay evidence" and is "less probative of the likeliness that he would be persecuted . . . [than] non-hearsay evidence of [Yu's] experiences after his detention." *Gu*, 454 F.3d at 1022.

## III

Substantial evidence supports the BIA's conclusion that Yu failed to show it is more likely than not that he would be tortured in China. *See* 8 C.F.R. § 1208.16(c)(2). Torture is "more severe than persecution." *Nuru v. Gonzales*, 404 F.3d 1207, 1224 (9th Cir. 2005). Because the record does not compel a finding that Yu has a well-founded fear of future persecution, he cannot satisfy the higher

4

standard of proof for relief under the CAT. *See id.*

**PETITION FOR REVIEW DENIED.**

FILED

JAN 11 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Yu v. Rosen*, No. 16-70089
KENNELLY, District Judge, concurring in part and dissenting in part:

I join the majority's decision with respect to Part III, but respectfully dissent from Part I and II. I would grant Zhanwen Yu's petition because the record compels the conclusion that he faced past persecution for an imputed political opinion.

The BIA took Yu's testimony as true and found it insufficient. Our review is limited to the BIA's grounds, *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015) (en banc), so I begin with the facts as Yu described them during his testimony.

Yu testified that after losing his factory job, he—along with other fired workers and family members—participated in a demonstration outside a government building, where he was beaten by the police. The police knocked Yu to the ground, handcuffed him, and transported him to a detention center where he was held for seven days. Police officers interrogated Yu about his participation in an "illegal gathering to disrupt the social order." When Yu refused to admit his participation, the police punched, kicked, and beat him at least a dozen times with a police baton. During a second interrogation, the police ordered Yu to sign a letter promising not to participate in future illegal gatherings or plan demonstrations with other workers, and they asked him to disclose the identities of other demonstration participants. Yu refused to sign the letter, and the police beat him with a baton three to four times. Yu then signed the letter. As a condition of his release, the police required Yu to report to them weekly on Wednesdays—which he did five times. During these

visits, the police asked Yu whether he "collude[d] with other workers to participate in any kind of activities or events and you have disrupted the social order and the like [sic]" in the past week. Yu also testified that his wife reported that the police came to their home looking for him and that a coworker who also participated in the demonstration was sentenced to a three-year prison term.

In sum, Yu (1) was "physically harmed during his … detention," and "coerced into signing a document" forbidding participation in protected activities, like the petitioner in *Guo v. Ashcroft*, 361 F.3d 1194 (9th Cir. 2004); (2) was required to report to the police weekly as a condition of his release; (3) endured a seven-day detention; and (4) the government sustained its interest in him after his release, like the petitioner in *Quan v. Gonzales*, 428 F.3d 883 (9th Cir. 2005). In my view, "[t]he totality of the circumstances" compels the conclusion that Yu faced past persecution. *See Guo*, 361 F.3d at 1203; *see Quan*, 428 F.3d at 890.

The majority cites *Gu v. Gonzales*, 454 F.3d 1014 (9th Cir. 2006), where this Court concluded that the petitioner failed to establish past persecution. But Yu's seven-day detention was more than twice the length of the three-day detention faced by the petitioner in *Gu*, and it exceeded the one-day detention in *Quan* and the day-and-a-half long detention in *Guo*, cases in which this Court concluded that the petitioner established past persecution. *See Gu*, 454 F.3d at 1017; *see Quan*, 428 F.3d at 888-89; *see Guo*, 361 F.3d at 1203.

Moreover, contrary to the majority's reasoning, it is immaterial to our past persecution inquiry that Yu's injuries were "skin level," or that he neither sought medical attention nor faced long-term health effects. *See Quan*, 428 F.3d at 888-89 ("Using an electrically-charged baton on a prisoner … may constitute persecution, even when there are no long-term effects and the prisoner does not seek medical attention."); *see Guo v. Sessions*, 897 F.3d 1208, 1215 (9th Cir. 2018) ("We have explicitly rejected the implication that our decision [in *Guo v. Ashcroft*] stemmed from the severity of [the petitioner's] beating" … "[m]oreover, a beating 'may constitute persecution, even when there are no long-term effects and the petitioner does not seek medical attention.'") (quoting *Quan*, 428 F.3d at 888).

Also, this Court "need not decide whether Petitioner's beating alone amounted to persecution because his asylum claim is also premised on his release conditions." *Guo*, 897 F.3d at 1215. Specifically, Yu suffered persecution because he was "forbidden by the government" from participating in demonstrations, and not merely forbidden from having certain political beliefs. *Id.* As such, the majority's conclusion that Yu did not show past persecution because his "detention … was an isolated episode, and he was interrogated only twice during that span," "disregards the reality that, because [Yu] was forbidden from [participating in labor protests] and required to report to the police weekly," which Yu did for five consecutive

weeks, "his persecution was ongoing" and he faced "state-imposed limitation[s]." *Guo*, 897 F.3d at 1215; *see Gu*, 454 F.3d at 1021.

In concluding that the police did not impute a political opinion to Yu, the majority says that the police were focused on Yu's participation in illegal acts, not by a belief that he had a political opinion. I respectfully disagree. "A political opinion encompasses more than electoral politics or formal political ideology or action." *Ahmed v. Keisler*, 504 F.3d 1183, 1197 (9th Cir. 2007). "Although there is no easy test to determine when a worker's or employer's action is political—as opposed to or in addition to economic—our case law makes clear that labor agitation advancing economic interests can nevertheless express a political opinion." *Hu v. Holder*, 652 F.3d 1011, 1018 (9th Cir. 2011).

In this case, the record compels the conclusion that the police imputed political beliefs to Yu when they accused him of his "labor agitation" and "disrupt[ion] [of] the social order" after he participated in a demonstration outside a government building. As a condition of release, the police forced Yu to sign a letter barring him from participating in further demonstrations and colluding with other workers, and they urged him to disclose and report on workers who participate in illegal demonstrations. Further, Yu testified that his weekly questioning by the police fixated on whether he had colluded with other workers or disrupted the social order in the previous week. These facts reveal the focus of the authorities' concern—

4

whether Yu, even after being released, was actively involved in labor protests with fellow dissidents. This cannot reasonably be understood as anything other than targeting Yu for what the authorities considered to be political views.

"Proof of past persecution gives rise to a presumption of a well-founded fear of future persecution and shifts the evidentiary burden to the government to rebut that presumption." *Ahmed*, 504 F.3d at 1192. Because I conclude that Yu established past persecution, I would grant his petition and remand to the BIA to determine whether the government can rebut the presumption of a well-founded fear of persecution.